**Joyce SLATER, Appellant,**

v.

**Lowell BAKER, Respondent.**

**No. 51402.**

Supreme Court of Minnesota.

Jan. 9, 1981.

Phillips, Gross & Aaron and Felix M. Phillips, Minneapolis, for appellant.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, William D. Flaskamp, and J. Richard Bland, Minneapolis, for respondent.

SCOTT, Justice.

This is an appeal from a judgment of the Hennepin County District Court in a medical malpractice case. The jury returned a finding by special verdict in favor of the defendant, Dr. Lowell Baker. The plaintiff appeals. We reverse and grant a new trial.

In 1975, the plaintiff, then a 55-year-old woman, was under the medical care of defendant. Since 1971 Dr. Baker has specialized in neurology and neuromuscular diseases. He initially treated the plaintiff in January 1973, when Dr. Harold Noran requested him to perform a muscle biopsy. In January 1974, Dr. Noran requested Dr. Baker to handle all aspects of plaintiff's case because he had greater expertise in neuromuscular diseases. Dr. Baker treated plaintiff's neuromuscular diseases from February 1974 to July 1978.

In March or September, 1975, the plaintiff allegedly noted a palpable lump in her right breast. Plaintiff testified that at one of her regular examinations with Dr. Baker in March or September of 1975 she informed him of this problem. Plaintiff testified that the following conversation ensued between herself and Dr. Baker:

A. I said to Dr. Baker I had what I thought was a lump in my breast.

Q. And he said what to you?

A. He said well, let's look at it.

Q. Then what was done, what did you do?

A. I took off my blouse and my bra.

Q. And then what did he do?

A. He examined my lump with his hands, looked at it, examined both breasts.

Q. About how long did this examination take?

A. Two or three minutes.

Q. And what exactly * * * did he do when he examined your breasts?

A. Well he felt my breast. I pointed out to him the part of my breast where I thought there was a lump. He recognized it, moved it around a bit and said it was nothing to be concerned about.

Q. Were those his very words, ma'am?

A. His very words, it was nothing to be concerned about.

In contrast to plaintiff's definite recollection of the 1975 breast examination, Dr. Baker could not recall having made such an

examination. Because Dr. Baker could not find any reference to a 1975 breast examination on plaintiff's chart, he concluded that he never examined plaintiff's breasts in 1975.[1]

In July, 1978, plaintiff again called the breast lump to Dr. Baker's attention. Plaintiff testified that she did so because a friend of hers who previously had been diagnosed as healthy was now dying of cancer. Due to this concern, the plaintiff asked Dr. Baker how he could be so certain that her breast lump was not malignant. Dr. Baker allegedly replied, "I don't know, and I think you should see Dr. Sosin at once."

Following Dr. Baker's advice, plaintiff was examined by Dr. Sosin on July 25, 1978. Based on that examination the plaintiff was hospitalized at Mount Sinai Hospital on August 2, 1978, where a biopsy was performed. Because the biopsy revealed a malignancy, Dr. Sosin performed an operation removing plaintiff's breast and twenty lymph nodes.[2]

When Dr. Sosin initially examined the plaintiff in July 1978, she allegedly gave him a history of having had a lump in her right breast for only two years. The history given by the plaintiff to a medical school student upon her admission to Mount Sinai Hospital also indicated that she "first noted a mass in the right breast approximately two years ago * * *." Assuming the validity of the histories taken by Dr. Sosin and his assistant, Dr. Baker did not examine plaintiff's breasts in 1975. Because of this alleged inconsistency Dr. Baker's counsel vigorously cross-examined plaintiff about the facts "according to your story," and whether she was being truthful concerning the alleged 1975 examination by Dr. Baker.

To counter the implicit, if not explicit, claim that plaintiff's testimony concerning the 1975 examination was fabricated, plaintiff attempted to introduce into evidence the testimony of four separate witnesses. These witnesses allegedly would have testified that plaintiff had made statements to them in 1975 or shortly thereafter that Dr. Baker had examined her breasts and that he indicated there was no reason to be concerned. The witnesses included her then husband, Harry Slater, who allegedly had observed the breast lump and had driven her to Dr. Baker's office in 1975. Immediately after the 1975 examination plaintiff and her husband allegedly discussed Dr. Baker's opinion that there was no reason for concern. Plaintiff and her husband were divorced in November, 1975.

A second witness was the plaintiff's adult daughter, Gail Fors, who worked in plaintiff's employment agency business. She too would allegedly have testified that plaintiff advised her of the breast lump and Dr. Baker's 1975 assurances.

Judith Thorkelson, personnel manager at Augsburg Publishing House and a personal friend of the plaintiff, also would allegedly have testified regarding Dr. Baker's examination and assurances. Specifically, she would have indicated that plaintiff advised her of Dr. Baker's comments while on a vacation they shared six months after the alleged 1975 examination.

Finally, Marge Lisouskis, plaintiff's former employee, allegedly would have testified that plaintiff informed her of the alleged 1975 examination and Dr. Baker's assurances.

1. On direct examination Dr. Baker also testified that "from 1971 down to the present day" he had never examined a patient's breast. However, on cross-examination Dr. Baker admitted that "it is possible" that he may have performed some examinations of female patients' breasts during the past ten years.

2. Sufficient expert medical opinions were introduced into evidence to indicate that if the examination occurred in 1975, in the manner that plaintiff testified, then Dr. Baker's failure to take chest x-rays, mammograms, and a biopsy, and to refer his patient to a qualified surgeon, was below the standard of care for physicians in the community and constituted negligent treatment and malpractice (testimony of Dr. Michael Eisenberg). The trial record also indicates adequate medical expert testimony that the failure to treat the cancer in 1975 shortened plaintiff's life expectancy (testimony of Dr. Burton Schwartz; testimony of Dr. Michael Eisenberg).

In each instance, the trial court ruled that such testimony was inadmissible hearsay. At the conclusion of the trial the jury answered the following special interrogatory in the negative:

Question 1: Did the plaintiff, Joyce Slater, advise the Defendant, Dr. Lowell Baker, of the existence of the lump in her right breast in the year 1975?

Answer: Yes ___ No. _X_.

The issue we have before us is whether the trial court erred in refusing to permit the plaintiff to introduce the testimony of four witnesses who allegedly heard the plaintiff make prior consistent statements about the medical treatment she received, when such testimony refuted the defendant's claim that the plaintiff's statements regarding medical treatment were fabrications.

Rule 801(d)(1)(B) of the Minnesota Rules of Evidence reads in relevant part as follows:

A statement is not hearsay if * * * the declarant testified at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * consistent with his testimony and *is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive* * * *.

(Emphasis added.)

Rule 801(d)(1)(B) is consistent with the law of Minnesota which existed prior to the adoption of the Minnesota Rules of Evidence. In *Sullivan v. Minneapolis St. Ry.*, 161 Minn. 45, 200 N.W. 922 (1924), this court indicated that prior consistent statements were admissible:[3]

The general rule precluded [the] reception [of hearsay evidence]. There is,

however, a well recognized exception to this rule, and the exception is this: *When the counsel on the other side imputes a design to misrepresent, or charges a recent fabrication from some motive of interest or relationship, it is proper, in order to repel and refute such an imputation, to show that the witness made a similar statement or report as to the matter concerning which he testifies at a time when the supposed motive did not exist* * * *.

*Id.* at 51–52, 200 N.W. at 924 (emphasis added).

The *Sullivan* evidentiary holding and Minn.R.Evid. 801(d)(1)(B) are consistent with the law in all jurisdictions. Professor McCormick's treatise states:

Again, if in the particular situation, the attack by inconsistent statement is accompanied by, or interpretable as, a charge of a plan or contrivance to give false testimony, then proof of a prior consistent statement before the plan or contrivance was formed, tends strongly to disprove that the testimony was the result of contrivance. *Here all courts agree.*

C. McCormick, *McCormick's Handbook of the Law of Evidence* § 50, at 106 (2d ed. E. Cleary 1972) (footnote omitted; emphasis added).

Rule 801(d)(1)(B) of the Minnesota Rules of Evidence is patterned after its counterpart in the Federal Rules of Evidence.[4] As such, the analysis contained in Judge Weinstein and Professor Berger's treatise on the Federal Rules of Evidence is instructive. These noted commentators state that:

Prior consistent statements are given *substantive* effect by Rule 801(d)(1)(B) if they are admitted to rebut charges of

---

**3.** In *Sullivan*, the plaintiff, a passenger on defendant's streetcar, was injured when the streetcar came to a sudden stop. The defendant claimed that he had to make an emergency stop because an unidentified truck pulled in front of the streetcar. Plaintiff's counsel argued that defendant's testimony in this regard was fabricated shortly before trial. Because of this assertion, the trial court permitted the defendant to introduce an "Emergency Stop Report" which the streetcar operator had written

after the accident. *See* 161 Minn. at 50–52, 200 N.W. at 924–25. The fact that the statements in the instant case were oral does not change the underlying policies set forth in *Sullivan* supporting the admissibility of prior consistent statements.

**4.** The language of the federal and state rules is identical. *Compare* Fed.R.Evid. 801(d)(1)(B) *with* Minn.R.Evid. 801(d)(1)(B).

recent fabrication or improper influence or motive. These are the two situations in which all American jurisdictions concur in allowing consistent statements to be used for rehabilitation * * *.

Rule 801(d)(1)(B) should apply only when there is some suggestion—*even if it is slight*—that the witness consciously altered his testimony after making the inconsistent statement by which he has been impeached.

J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 801(d)(1)(b)[01], at 801–116 to –119 (1979) (footnotes omitted; emphasis added).

Professor Peter Thompson also indicates that "[u]nder the rule [Minn.R.Evid. 801(d)(1)(B)] the prior consistent statements would be admitted as substantive evidence where previously the statements may have been admitted for limited purposes on the issue of credibility of the witness."[5] Thompson, *Evidence* § 801.06, at 334 (1979) (footnote omitted).

■ Before Minn.R.Evid. 801(d)(1)(B) applies, three conditions precedent must exist. First, the declarant must testify at the trial and be subject to cross-examination concerning the statement. Second, the statement must be consistent with the declarant's prior testimony. Finally, the statement must be offered to rebut an express or implied charge against the declarant of a recent fabrication or improper influence or motive. The only dispute in the instant case is whether the third requirement is met. Concerning this third requirement, respondent states:

> It is a condition precedent to the admission of a prior consistent statement that there be a charge of recent fabrication. None existed or occurred in the instant case.
>
> No claim whatsoever was made that plaintiff had recently fabricated the story about the conversation with Dr. Baker in 1975.

The trial court record, however, does not support respondent's argument. On several occasions respondent's counsel implied that appellant was not telling the truth about the alleged 1975 medical examination.

■ First, respondent's counsel began the trial by initiating a discussion in chambers requesting the trial court to order the appellant to refrain from making any mention in her opening argument about the prior consistent statements. In making this request, respondent's counsel stated:

> I would believe that an attempt will be made here to bootstrap the claim of the plaintiff inasmuch as *it is a question of the first initial question, who is telling the truth about the 1975 episode * * *.*

(Emphasis added.)

Second, respondent's counsel vigorously cross-examined appellant concerning the facts "according to your story," and whether she was being truthful regarding the alleged 1975 examination by Dr. Baker. In *United States v. Majors*, 584 F.2d 110 (5th Cir. 1978), the court held that where there was a "vigorous cross-examination" of the prosecution's witness the government could introduce the testimony of the witness' former attorney that the witness had given the same story when he was arrested." *See id.* at 113 (citing Fed.R.Evid. 801(d)(1)(B). The court's reasoning in *Majors* is equally apt in the instant case. Implicit in respondent's vigorous cross-examination of appellant is the claim that she was being less than honest concerning the alleged 1975 examination.

Third, on cross-examination respondent's counsel asked appellant a series of questions which suggested that appellant had memory problems. Several courts have indicated that attempts to impugn a witness' memory will permit the admission of prior consistent statements. For example, in *Applebaum v. American Export Isbrandtsen Lines*, 472 F.2d 56 (2d Cir. 1972), the court stated that "even when the self-contradiction amounts only to an imputation of inaccurate memory

---

**5.** Professor Thompson served as the reporter of the Minnesota Supreme Court Advisory Committee on the Rules of Evidence. *See* Order Promulgating the Rules of Evidence *reprinted* in 308 Minn.App. (1977).

a consistent statement made when the event was recent and memory fresh should be received" into evidence. *Id.* at 61–62. A New Jersey Federal District Court judge also made a similar observation in *United States v. Keller*, 145 F.Supp. 692, 697 (D.N.J.1956) ("Where the judge construes a line of questioning to be directed towards impugning the memory of a witness, then he will allow a consistent statement made when the event was recent and memory fresh to be received in support.") *Cf. State v. Altergott*, 57 Haw. 492, 559 P.2d 728 (1977) (modern trend of authority admits consistent statements when there has been an imputation of inaccurate memory) (citing Fed.R.Evid. 801(d)(1)(B).

Fourth, respondent's counsel asked Dr. Sosin (the physician to whom the appellant was referred by Dr. Baker) whether she ever claimed to him that in 1975 Dr. Baker had examined the lump in her breast. Dr. Sosin responded, "Not to my recollection." Again, this could easily be interpreted as an implied charge of a recent fabrication. *Cf. United States v. Iaconetti*, 406 F.Supp. 554, 558 (E.D.N.Y.), *aff'd without consideration of this ground*, 540 F.2d 574 (2d Cir. 1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977). ("The total variance between the two accounts * * * is sufficient to constitute an implied claim by the defendant that [the witness] lied.")

Finally, in respondent's closing argument he expressly indicated that appellant's allegations were inconsistent with the hospital records taken by Dr. Sosin's assistant:

> She claims to the contrary, but you will find in the records here, and the testimony is in 1978, when she saw Dr. Sosin, his testimony is that she told him that she had had the condition of the lump in her breast for two years, which would be back to 1976. She mentioned nothing to him about having called that to the attention of Dr. Baker, and here is the hospital admission record in 1978, and Dr. Sosin took this history when she came to his office, and then a very detailed history was taken from her by a medical student * * *. Here is what she says about that:

> 'The patient first noted a mass in the right breast approximately two years ago.' We are talking now about August of 1978. 'But at that time was having an exacerbation of her neurological disorder *and did not have the former problem evaluated at that time.*' That's what that written out history is. That was August 1, 1978.

(Emphasis added.)

Because respondent questioned the credibility of plaintiff's testimony and implied that she was fabricating or had an inaccurate memory, Minn.R.Evid. 801(d)(1)(B) is applicable. We therefore find that the trial court was clearly and prejudicially erroneous in ruling that the prior consistent statements were inadmissible in the setting created by the defense in this case, as reflected by the entire record.

The case is reversed and a new trial granted.