STATE of Minnesota, Respondent,

v.

John Patrick SULLIVAN, Appellant.

No. CX–84–807.

Court of Appeals of Minnesota.

Jan. 8, 1985.

Hubert H. Humphrey, III, Atty. Gen., State of Minn., Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, J. Michael Richardson, Asst. Co. Atty., Minneapolis, for respondent.

Donald A. Hillstrom, Minneapolis, for appellant.

Heard, considered and decided by PARKER, P.J., and SEDGWICK and LESLIE, JJ.

## OPINION

LESLIE, Judge.

Appellant John Sullivan appeals from a conviction of first-degree intrafamilial sexual abuse in violation of Minn.Stat. § 609.-3641 (1982) for sexually penetrating his four-year-old son. He contends the evidence is insufficient to sustain the conviction and that the trial court erred in admitting a videotaped police interview of the child, in excluding polygraph and voice stress test results, and in refusing his request to have the child examined by a psychiatrist. We affirm.

## FACTS

Appellant was charged with two counts of first-degree sexual abuse in June 1983. In September 1983 he entered a *Goulette* plea (in which the accused pleads guilty even though claiming innocence), which was withdrawn in January 1984. He was convicted of one count and acquitted of one count after a court trial in March 1984 and sentenced to 43 months incarceration, the presumptive sentence under the guidelines.

At trial his son, who was then five years old, testified that appellant had penetrated him while the child was visiting for a weekend in May 1983. He demonstrated the act with anatomically correct dolls.

Appellant's former wife, Marsha Anderson, testified that after the weekend visitation she observed the child lying face-down on the couch with his pants pulled down. He had an erection and was thrusting his pelvis into the couch. She had noticed before this time that he had begun to slide his hands down his pants, hold his buttocks, and perform pelvic thrusts. She did not question him about his behavior but immediately arranged for him to see a child abuse counselor.

The counselor testified that the child had demonstrated on anatomically correct dolls that the daddy doll "was putting daddy's penis in [the child's] butt." He also indicated that his father had masturbated in front of him and told him not to tell his mother or she would spank him. The counselor then had a short discussion with Marsha Anderson. When they returned to the lobby where the child was waiting, they found him on the floor, his pants around his knees, making thrusting motions on the floor.

Shirleen Knapp, an officer in the family violence unit of the Minneapolis Police Department, testified that she had videotaped her initial interview with the child. The videotape was played at trial. On the tape the child described the act and demonstrated it with dolls.

The physician and nurse who performed a sexual assault exam testified that the examination was normal. The doctor testified that there is not always a demonstrable injury after anal penetration. Both of them repeated the child's description of the

abuse, and both testified that during the rectal exam the child "did some rocking masturbatory type activity, had an erection * * * and did some fondling of his penis."

The defense theory was that Marsha Anderson had fabricated the crime and had manipulated the child into believing it had happened. Appellant testified about the bitterness of their divorce and subsequent custody battle. He denied abusing the child.

During the last weekend appellant and his son were together, they visited the home of some friends. Molly Boudreau and Janet Klinke testified that they observed Molly's daughter, who was four at the time, trying to insert a clothespin into the boy's rectum. He was lying on his stomach with his pants around his knees. She said she was pretending to take his temperature.

Finally, appellant's psychologist, Dr. John Vancini, testified that he had treated both appellant and Marsha Anderson from October through December 1979 when appellant was hospitalized for psychological problems. Marsha Anderson invoked her psychologist-client privilege, and Vancini was not allowed to testify about her. He had diagnosed appellant's illness as psychotic depression with paranoid tendencies. Appellant had a complete breakdown over his fear that everyone knew about his transvestism. Vancini treated appellant after his discharge until April 1980. When he next saw appellant in August 1981, he thought appellant was "remarkably restored to good health." However, he has not treated appellant since April 1980.

## ISSUES

1. Is the evidence sufficient to sustain appellant's conviction for first-degree intrafamilial sexual abuse?

2. Did the trial court err in admitting the videotaped interview of the victim and in refusing to admit polygraph and stress test results?

3. Did the trial court err in refusing to order an examination of the child by a psychologist or psychiatrist of appellant's choice?

## ANALYSIS

### I.

In reviewing a claim of insufficiency of the evidence the court is limited to determining whether a trier of fact could reasonably conclude the defendant was guilty of the offense charged. The court must take the view of the evidence most favorable to the state and must assume the state's witnesses were believed and any contradictory evidence was disbelieved. See, e.g., State v. Nash, 342 N.W.2d 177, 179 (Minn.Ct.App.1984) (citing, inter alia, State v. Merrill, 274 N.W.2d 99, 111 (Minn. 1978)).

Minn.Stat. § 609.3641, subd. 1(1) (1982) defines first-degree intrafamilial sexual abuse as sexual penetration of a child with whom the actor has a familial relationship. The evidence shows that the child consistently told the same story to everyone who asked him about it. He told it with a great amount of detail, which we do not think necessary to repeat in this opinion. Although he was occasionally vague about dates and names of some of the people he had talked to since the crime was reported, his testimony about the incident was direct and clear. For example, after appellant's attorney cross-examined him, the following exchange occurred:

BY [THE PROSECUTOR]:

Q: Did daddy stick his penis in your butt?

A: Yeah.

Q: Did mommy tell you to come in here and say that or did it happen?

A: That happened, and she told me to come in and—and tell it to the judge.

Q: Are you telling the judge the truth?

A: Yeah.

The videotape is also compelling evidence. It was made before the child had spoken to anyone except the counselor about the abuse. He gave a detailed description of the incident. In addition, the

child's behavior corroborates his testimony. It is difficult to believe that a four-year-old would develop this disturbing behavior, which was observed by several impartial witnesses, simply to support a fabricated story.

We therefore hold that a trier of fact could reasonably conclude that appellant was guilty of the crime charged. The evidence is sufficient to sustain his conviction.

## II.

The trial court allowed the prosecution to introduce the videotape of Officer Knapp's interview with the child under Minn.R.Evid. 801(d)(1)(B) to rebut appellant's charge that the child's story was fabrication. The videotaped testimony was also admitted for corroborative purposes. *See, e.g., State v. Kruse*, 302 N.W.2d 29, 31 (Minn.1981). Appellant contends admission of the tape violated the rules of evidence and denied him due process of law and his right to a fair trial.

■ Rule 801(d)(1)(B) allows the use of prior consistent statements as substantive evidence if three conditions precedent exist:

First, the declarant must testify at the trial and be subject to cross-examination concerning the statement. Second, the statement must be consistent with the declarant's prior testimony. Finally, the statement must be offered to rebut an express or implied charge against the declarant of a recent fabrication or improper influence or motive.

*Slater v. Baker*, 301 N.W.2d 315, 319 (Minn.1981).

In *Slater* the court said "[i]mplicit in * * vigorous cross-examination * * * is the claim that [the witness] was being less than honest," *id.*, and the court held that because the defendant had questioned the plaintiff's credibility and had implied that she was fabricating or had an inaccurate memory, Minn.R.Evid. 801(d)(1)(B) was applicable, *id.* at 320. The court found the exclusion of prior consistent statements "clearly and prejudicially erroneous" and granted a new trial.

■ These requirements were met. The child testified and was cross-examined. The videotape was consistent with his prior testimony, and the defense theory was that his testimony was pure fabrication. Although appellant contends he accused the mother rather than the child of fabricating the incident, so that the rule does not apply, we find this to be a distinction without substance.

The record shows that the child reviewed the videotape before trial. Although we find that use of the videotape was proper under the rules, we agree that use of a videotape to refresh a child's memory could possibly deny the defendant a fair trial. There is a danger, because of the suggestible nature of children, that they will merely repeat testimony they have heard instead of testifying from memory. There is also a danger that the child's memory will fade during pretrial delays and that valuable testimony will lose its accuracy. In either case, use of a previously recorded videotape to refresh a child's memory may be prejudicial because it is not possible to cross-examine a child as vigorously as an adult. In addition, use of a videotape in this manner opens the prosecution to charges of coaching the child. To avoid these dangers, it is imperative that trials in child abuse cases be expedited.

The record shows that the child's testimony regarding the essential facts was unequivocal. Appellant elicited the fact that the child had reviewed the tape, so the court could evaluate the child's testimony in this light. Under these circumstances appellant was not denied a fair trial or due process of law.

■ The court also excluded the results of two polygraph tests, which appellant contends should have been admitted. Polygraph test results are inadmissible in both criminal and civil actions because there is insufficient evidence of their reliability. *See, e.g., M.N.D. v. B.M.D.*, 356 N.W.2d 813, 819 (Minn.Ct.App.1984) (citing *State v. Michaeloff*, 324 N.W.2d 926, 927 (Minn.1982)). Furthermore, there is no due

process right to admission of polygraph test results. *United States v. Gordon*, 688 F.2d 42, 44 (8th Cir.1982) (citing *United States v. Bohr*, 581 F.2d 1294, 1303 (8th Cir.), *cert. denied*, 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978)).

 In addition, the results of two voice stress tests were excluded on grounds of unreliability. Appellant offered no foundation to show their reliability and now argues that he was not given a chance to lay the foundation for these tests. The record shows that appellant's attorney offered to bring in a polygraph expert, but there was no offer of proof as to the validity of voice stress tests. The trial court did not abuse its discretion in excluding them.

### III.

Appellant finally contends that the trial court should have ordered the child to undergo an examination by a psychologist or psychiatrist of his choice. Appellant moved for a psychiatric examination at the time of his *Goulette* plea for purposes of a presentence investigation. He also made an oral motion for an examination when the plea was withdrawn, which the court denied because the State had not been given notice. There is a written motion in the district court file dated January 20, 1984, but there is no record of an order granting or denying that request.

 The State contends that because the record is inadequate this court should not decide the issue. We find the record sufficient to hold that there was no error in denying appellant's motion. The decision to order an examination for the purpose of determining a child's competence as a witness is within the discretion of the trial court. *See, e.g., State v. Shotley*, 233 N.W.2d 755, 758 (Minn.1975); *State v. Whelan*, 291 Minn. 83, 86–87, 189 N.W.2d 170, 173 (1971).

### DECISION

Affirmed.