THE PRESS, INC., Appellant,

v.

FINS & FEATHERS PUBLISHING
COMPANY, Respondent.

No. C2-84-851.

Court of Appeals of Minnesota.

Jan. 22, 1985.

Richard D. Allen, Minneapolis, for appellant.

Alan R. Nettles, Carrie L. Hess, Meyer, Njus, Johnson & Nettles, Minneapolis, for respondent.

Heard, considered and decided by NIER-ENGARTEN, P.J., and FOLEY and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

The trial court awarded damages for breach of an oral contract which is found

enforceable under the "partial payment" exception to the statute of frauds. We affirm.

## FACTS

Respondent Fins and Feathers Publishing Company (Fins and Feathers) publishes a magazine. Appellant The Press, Inc., (Press) is a printing company. During 1981, Press completed a number of printing jobs for Fins and Feathers and the parties had an ongoing business relationship. From June through December 1981, Press charged Fins and Feathers over $31,000 for printing jobs; $18,200.72 of this debt accrued through September 16. In the latter part of 1981, Fins and Feathers proposed that Press print a two million piece run of newspaper inserts that would invite subscriptions to the respondent's magazine.

The key issue at trial was whether or not Press accepted this offer. Respondent contends that Press orally agreed to the run and to a restructuring of its payment schedule to include about $46,000 for the new run. Respondent asserts that Mr. Batdorf, a salesman for appellant, agreed to the terms of the proposal during a telephone conversation on October 26, 1981, by stating: "We can live with that." The jury, through its special verdict, found that respondent's subsequent payment to the appellant of $18,200.72 on October 26, 1981, was not intended by either party to be credited exclusively to the respondent's existing debt to the appellant. The jury also found that there was a contract between the parties and that Fins and Feathers suffered $14,426.35 damages due to appellant's breach. This verdict was offset by $12,550.87, a balance admittedly owed by respondent.

Appellant contends that it did not consummate an agreement with Fins and Feathers for the run, and that the purported agreement was barred under the statute of frauds. Minn.Stat. § 336.2–201 (1982). On appeal, appellant contends that if the "partial payment" exception takes the oral contract out of the statute of frauds, then the contract should only be enforced to the amount of the partial payment. Minn.Stat. § 336.2–201(3)(c). Appellant also asserts that the trial court erred by allowing an exhibit into evidence.

The trial court denied appellant's motions for judgment notwithstanding the verdict and for a new trial and this appeal followed.

## ISSUES

1. Did the trial court err by allowing an exhibit into evidence over appellant's hearsay objection?

2. Did the trial court correctly apply the partial payments exception to the statute of frauds?

## ANALYSIS

1. Hearsay objection.

Appellant contends that exhibit # 6 should have been excluded as hearsay. Exhibit # 6 was a writing of an employee of Fins and Feathers authored during the telephone conversation on October 26, 1981. The writing was labeled as a payment schedule and consisted of various dates in the left margin and various dollar amounts in three columns. Two columns referred to a "2 million run" and showed payments totaling about $77,000, about $46,000 more than the obligation already incurred by Fins and Feathers. Each of these columns noted an $18,200.72 payment opposite the date of October 20, 1981. The third column referred to a "1 million run" and showed payments totaling about $55,000.

The writing was admitted into evidence upon redirect examination of the employee, after he was cross-examined. Appellant objected to admission of the evidence on the grounds that it was hearsay and there was a lack of foundation. The trial court overruled the objection and admitted the exhibit into evidence.

Rule 801(d)(1)(B) of the Minnesota Rules of Evidence reads in relevant part as follows:

A statement is not hearsay if * * * [t]he declarant testifies at the trial or

hearing and is subject to cross-examination * * * and the statement is * * * consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive * * *.

Because exhibit # 6 is a "written assertion," it is by definition a "statement" under Rule 801(a)(1) of the Minnesota Rules of Evidence. Exhibit # 6 was offered during the testimony of its author; also, appellant had ample opportunity to cross and recross-examine the witness. The exhibit was consistent with the testimony given earlier at the trial by respondent's employee. He had testified extensively on the conversation and his testimony was primary support for the finding of an oral contract.

The third prong of the test is more troublesome. The statement must be offered to rebut an express or implied charge against the declarant of a recent fabrication or improper influence or motive. *Slater v. Baker*, 301 N.W.2d 315, 319 (Minn. 1981). An implied charge of recent fabrication has been inferred from extensive cross-examination of the witness. *See id.* at 319–20. *See also Garcia v. Watkins,* 604 F.2d 1297 (10th Cir.1979); *United States v. Majors,* 584 F.2d 110 (5th Cir. 1978). Implicit in a vigorous cross-examination of a witness is the claim that he is being less than honest about his testimony. Respondent's employee was subjected to extensive cross-examination by appellant before the exhibit was admitted.[1]

In sum, the trial court correctly allowed exhibit # 6 into evidence upon the redirect examination of its author.

2. Partial payment exception to the statute of frauds.

■ Fins and Feathers wanted appellant to print an advertising run of two million inserts; this "run" represents a sale of future goods. Minn.Stat. § 336.2–105(2)

(1982). Article 2 of the Uniform Commercial Code "applies to transactions in goods * * *." Minn.Stat. § 336.2–102 (1982).

Both parties agree there is no writing of the run proposal that would meet the requirements of the statute of frauds. Minn. Stat. § 336.2–201. The statute on a partial payments exception states:

A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable * * * with respect to goods for which payment has been made and accepted or which have been received and accepted (section 336.2–606).

Minn.Stat. § 336.2–201(3)(c) (1982).

The official comments to U.C.C. § 2–201 explain:

Receipt and acceptance either of goods or of the price constitutes an unambiguous overt admission by both parties that a contract actually exists. If the court can make a just apportionment, therefore, the agreed price of any goods actually delivered can be recovered without a writing or, if the price has been paid, the seller can be forced to deliver an apportionable part of the goods.

U.C.C. § 2–201 comment 2 (1978).

■ Appellant contends that the payment received from Fins and Feathers should, as a matter of law, be found to be made only for the purpose of paying part of respondent's antecedent debt. However, the jury found that the payment was not considered by either party to be solely for paying the antecedent debt. This is not an unreasonable finding, considering the timing of the payment (3 days after the alleged contract), the planned restructuring of the payment schedule, and the ongoing nature of the relationship between the parties at the time. We must accept the finding that a partial payment was made. *Ruskamp v. Ferknes,* 261 N.W.2d 612 (Minn. 1978).

---

1. A commentator observes in this situation: "If upon redirect the declarant offers the prior consistent statement, conditions of admissibility can be examined while the impeachment is fresh in everyone's mind." Graham, *Prior Consistent Statements: Rule 801(d)(1)(B) of the Federal Rules of Evidence, Critique and Proposal,* 30 Hastings L.J. 575, 618 (1978).

Appellant contends that even if the part performance exception applies, Fins and Feathers is entitled to the benefit of only part of the printing contract. In a memorandum attached to its order denying a judgment notwithstanding the verdict, the trial court stated:

All of the evidence by whomever produced indicated one indivisible contract including labor and material for a single printing of two million copies of the supplement.

The official comment to U.C.C. § 2–201 indicates that "[i]f the court can make a just apportionment" it can enforce the contract for the part covered by the price paid. U.C.C. § 2–201 comment 2 (1978). The statute and the comments say nothing more to indicate whether a partial payment (and acceptance) on an "indivisible" contract allows a court to enforce the entire agreement.

Appellant cites an early U.C.C. case for the proposition that a mere partial payment on an indivisible unit is not sufficient to allow a buyer to prove and recover on an oral contract as contemplated by Minn.Stat. § 336.2–201(3)(c). *Williamson v. Martz*, 11 Pa.D. & C.2d 33 (1956). *Williamson* held that "[t]he Code therefore makes an important change by denying the enforcement of the contract where in the case of a single object the payment made is less than the full amount." *Id.* at 35.

The *Williamson* decision has been strongly criticized.[2] The majority of courts have refused to follow the case. *See Sedmak v. Charlie's Chevrolet, Inc.*, 622 S.W.2d 694 (Mo.App.1981).

It is a purpose of the code provision on partial payment to avoid enlargement of a contract by perjury.[3] However, the statute of frauds is not designed to justify repudiating promises that were in fact made. Corbin, *The Uniform Commercial Code-*

*Sales; Should It Be Enacted?*, 59 Yale L.J. 821, 829 (1950).

Further, here there was no quantity dispute; the *Sedmak* court found this decisive on the issue of divisibility. Where there is no quantity dispute, part payment evidences the existence of a contract as satisfactorily as would a written memorandum of agreement under the liberalized criteria of the code. *Id.* at 699.

The equities in this situation would seem to lie with the buyer who is attempting to enforce an oral contract:

Any other conclusion would work an unconscionable result and would encourage rather than discourage fraud * * * The Statute of Frauds would be used to cut down the trusting buyer rather than to protect the one who, having made his bargain, parted with a portion of the purchase price as an earnest of his good faith.

*Starr v. Freeport Dodge, Inc.*, 54 Misc.2d 271, 274, 282 N.Y.S.2d 58, 61 (D.Ct.1967), as quoted in *Thomaier v. Hoffman Chevrolet, Inc.*, 64 A.D.2d 492, 497, 410 N.Y. S.2d 645, 649 (1978).

### DECISION

The trial court properly determined the contract obligation of appellant and correctly admitted an exhibit which demonstrated the contract.

Affirmed.

---

2. *Williamson* has ceased to be the decided authority since 1967. Beane, *The Partial Payment Exception to the UCC Sale of Goods Statute of Frauds*, 13 U.C.C.L.J. 135, 144 (1980). White and Summers also endorse allowing a partial payment on an indivisible item to let the buyer

out of the U.C.C. Statute of Frauds. White and Summers, *Uniform Commercial Code* 68 (2d ed. 1980).

3. Beane, *supra* 157.