**STATE of Minnesota, Respondent,**

**v.**

**Edward Theodore FOLLEY, Appellant.**

**No. CX–85–154.**

Court of Appeals of Minnesota.

Nov. 26, 1985.

Hubert H. Humphrey, III, State Atty. Gen., St. Paul, William S. MacPhail, Wright County Atty., Katy L. Stesniak, Assistant County Atty., Buffalo, for respondent,

Barry V. Voss, Minneapolis, for appellant.

Heard, considered and decided by FORSBERG, P.J., and PARKER and FOLEY, JJ.

## OPINION

FOLEY, Judge.

This is an appeal from a judgment of conviction following a jury verdict on four counts of intrafamilial sexual abuse under Minn. Stat. §§ 609.3642 and 609.3641 (1984). Appellant's motion for a new trial was denied. Both parties' motions for departure from presumptive sentencing were denied. Appellant received an executed sentence of 54 months on Count IV and a stayed sentence on Count II. No sentence was given for Counts I and III. Appellant claims insufficient evidence to convict and ineffective assistance of counsel. We affirm.

## FACTS

Appellant's marriage to Crystal Dean produced two children: K.J. and T.L. At the time of trial, K.J. was eight years old and T.L. was five years old. The Folleys were divorced in October 1982. Appellant was allowed visitation with the children every other weekend. Subsequently, both parties remarried.

At trial, the mother testified that when the children returned from visitations with their father, she observed that they were quiet and withdrawn and that they had bruises on their legs and buttocks. She further noticed that before visitation, the children cried and said they did not want to go. Throughout the course of visitation during this period, the children had recurrent episodes of nightmares and bedwetting. According to the mother's testimony, K.J. would often wake up screaming, "Don't! Stop, it hurts." She also began to have problems with daydreaming in school, and her teachers testified that the behavior was interfering with her school work.

Thereafter, the mother contacted social worker Craig Sorenson. She claimed that he recommended examination of the children for sexual abuse. Sorenson recalled discussing the mother's concerns of sexual abuse but could not recall who suggested examination. On June 25, 1982, K.J. was examined by Dr. Zaph who found no physical evidence of sexual abuse. On the recommendation of Dr. Zaph, the mother periodically asked the children if anyone had been touching them.

On January 1, 1984, following visitation with appellant, the mother observed that both children were unhappy, moody and nonresponsive to affection. On January 5 she asked them if anyone had been touching their "private areas" and K.J. responded affirmatively that her father had. K.J. testified that her father would often watch her as she changed clothes. With the aid of anatomically correct dolls, she related incidents during bathing when she observed appellant touch T.L. between her legs with a washcloth and wiggle his fingers. She said appellant touched her in a similar way while bathing her and when she sat on his lap. She stated that appellant touched her in the breast area.

K.J. testified that on one occasion appellant and his wife tied her and T.L. to a bed and touched them in the breast and vaginal area. She also stated that appellant had inserted a pencil into their vaginas and twisted it, causing bleeding. These actions were repeated when the children were not tied down. T.L. substantially corroborated this activity. She stated that when she told her father to stop, he said "no," and she was warned her father would spank her if she told anyone.

Dr. Brenda Bergman, a clinical psychologist who examined both children, testified that both girls exhibited symptoms of anxiety, depression and sexually related problems. She stated that during therapy both children recounted episodes of sexual abuse through use of anatomical dolls and pictures. K.J. talked about "flashbacks" where she would recall incidents at appellant's house and then "wake up" at home or in school. Both children expressed a fear of male strangers and K.J., in particular, expressed a fear of her father.

Deputy Sheriff Gary Reitan testified that during an interview with K.J., she told him of appellant's touching during bathing and while tied to the bed. K.J. also told him that appellant would sometimes enter their

room at night, place her on the floor and lay in bed alongside T.L., with his hand on her vaginal area. Both a child protection worker and Reitan testified that T.L. related incidents of fellatio using the anatomical dolls.

Appellant maintained that the mother manipulated the children into fabricating the allegations as a means of preventing custody by appellant. A number of character witnesses testified on appellant's behalf. Social worker Craig Sorenson testified to appellant's strong desire for reconciliation of the marriage and to appellant's concern over ongoing visitation problems.

Jill Folley, appellant's second wife, also denied all allegations of sexual abuse against her husband. She stated that the only individuals to bathe and dress the children were herself and her daughter. On cross-examination, however, she admitted telling Hoglund on January 12, 1984 that she did not believe K.J. would fabricate events.

Both parties stipulated to the probable testimony of Dr. Zaph who was not present at trial. The stipulation contained the following:

2. The results of a physical examination on June 25, 1982, done on [K.J.] by Dr. Zaph, revealed her hyman intact. There was no evidence of trauma to the perineal area.

3. The size of the opening of the hyman is such that Dr. Zaph cannot tell if a pencil or finger was ever inserted.

On October 31, 1984, the jury found appellant guilty on four counts of intrafamilial sexual abuse contained within the indictment: Counts I and II—intrafamilial sexual abuse in the second degree for engaging in sexual contact with K.J. and T.L., respectively, in violation of Minn.Stat. § 609.3642, subd. 1(1) (1984); Counts III and IV—intrafamilial sexual abuse in the second degree for engaging in sexual contact by force and coercion with K.J. and T.L., respectively, in violation of Minn.Stat. § 609.3642, subd. 1(2)(a) (1984). On December 4, 1984, appellant filed notice of substitution of attorneys.

## ISSUES

1. Was the evidence sufficient to support appellant's conviction for second degree intrafamilial sexual abuse?

2. Was appellant denied effective assistance of counsel?

## ANALYSIS

1. *Sufficiency of Evidence.* When reviewing a claim of sufficiency of evidence, an appellate court must determine whether, under the facts in the record and any legitimate inferences that can be drawn from them, a jury could reasonably conclude that the defendant was guilty of the offense charged. *State v. Ulvinen,* 313 N.W.2d 425, 428 (Minn.1981); *State v. Sullivan,* 360 N.W.2d 418, 421 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. April 12, 1985).

Moreover, on appeal, a reviewing court must take the evidence most favorable to the state and assume that the jury believed state witnesses and disbelieved anything that contradicted their testimony. *State v. Thompson,* 273 Minn. 1, 139 N.W.2d 490 (1966), *cert. denied,* 385 U.S. 817, 87 S.Ct. 39, 17 L.Ed.2d 56 (1966).

The statutory base for appellant's conviction was provided by Minn.Stat. § 609.3642 (1984), which states that a person is guilty of second degree intrafamilial sexual abuse when:

(1) He has a familial relationship to and engages in sexual contact with a child; or

(2) He has a familial relationship to and engages in sexual contact with a child and:

(a) the actor or an accomplice used force or coercion to accomplish the contact;

Minn.Stat. § 609.3642, subd. 1(1) and subd. 1(2)(a) (1984).

Appellant claims the evidence is insufficient because there was no corroboration of the victims' testimony of sexual abuse and no medical testimony establishing penetration. This claim is without foundation.

In a prosecution under sections 609.342 to 609.346 [criminal sexual assault in the first, second, third and fourth degrees and subsequent offenses], the testimony of a complainant need not be corroborated.

Minn.Stat. § 609.347, subd. 1 (1984). In prosecutions involving sexual abuse of children, corroboration of the victim's testimony is only required if the evidence otherwise adduced is insufficient to sustain conviction. *State v. Myers,* 359 N.W.2d 604, 608 (Minn.1984).

Appellant relies solely on dictum in *State v. Ani,* 257 N.W.2d 699 (Minn.1977), to support his contention:

> Even though corroboration is not a requirement under the statute or the constitution, "[t]he *absence of corroboration in an individual case * * * may* well call for a holding that there is insufficient evidence upon which a jury could find the defendant guilty beyond a reasonable doubt."

*Ani,* 257 N.W.2d at 700 (quoting from Note, *The Rape Corroboration Requirement: Repeal Not Reform,* 81 Yale L.J. 1365, 1391 (1972)) (emphasis supplied). Appellant's use of this language distorts the court's holding in *Ani.* In that case, the supreme court upheld the defendant's conviction for rape, finding the victim's testimony positive, uncontradicted and strongly corroborated by other evidence. *Ani,* 257 N.W.2d at 700.

Here, a similar result is mandated. The children disclosed the sexual abuse on January 5, 1984. The mother testified that prior to that time she was concerned over frequent nightmares, bedwetting and daydreaming by K.J. She stated the children were unhappy, moody and nonresponsive after visitations with their father. Craig Sorenson, the child protection worker, corroborated that the mother was concerned over possible sexual abuse.

The most compelling testimony, however, was provided by the children themselves. Since both children were under 10 years of age, they were each examined by the court and found competent to testify. *See* Minn.

Stat. § 595.02 (1984); Minn.R.Evid. 601. In *State v. Whelan,* 291 Minn. 83, 189 N.W.2d 170 (1971), the court stated:

> "Determination of a person's competency as a witness is within the sound discretion of the trial court and is ordinarily made by such preliminary examination of the proposed witness as may be deemed necessary by the court. If it appears from the examination that the witness understands the obligation of an oath and is capable of correctly narrating the facts to which his testimony relates, the witness is competent in fact and should be permitted to testify."

*Whelan,* 291 Minn. at 86, 189 N.W.2d at 173 (quoting *State ex rel. Dugal v. Tahash,* 278 Minn. 175, 177–78, 153 N.W.2d 232, 234 (1967)).

The children's descriptions of sexual abuse were quite detailed. During a January 12, 1984 interview with child protection worker Hoglund and Deputy Reitan, K.J. recounted explicit details of the activity, referring a number of times to the placement of appellant's fingers between her legs, the "wiggling" of his fingers, the incidents during bathing and appellant's observation of her as she changed clothes. In a separate interview on January 20, 1984, T.L. corroborated these details and set forth additional incidents of fellatio, again in explicit detail.

Both children testified consistent with their prior statements. Both testified their father inserted a pencil into their vaginas, and both stated they were tied to a bed with a rope. From Dr. Bergman's examination of the children, she concluded they exhibited symptoms of anxiety, depression and sexually related problems. She testified that both children demonstrated episodes of sexual abuse through picture drawing and use of the anatomically correct dolls.

■ The children's detailed and consistent testimony here is an important factor in reviewing appellant's claims. In *State v. Sullivan,* 360 N.W.2d 418 (Minn.Ct.App. 1985), *pet. for rev. denied,* (Minn. April 12,

1985), the court placed heavy reliance on this factor, finding the evidence to convict sufficient. In *Sullivan,* an intrafamilial sexual abuse case, the victim demonstrated detailed sexual activity on anatomical dolls. Throughout interviews with social workers and medical personnel, he repeated the same story about the father's sexual demands.

> The evidence shows that the *child consistently told the same story to everyone who asked him about it. He told it with a great amount of detail,* which we do not think necessary to repeat in this opinion. Although he was occasionally vague about dates and names of some of the people he had talked to since the crime was reported, *his testimony about the incident was direct and clear.*

*Id.* at 421 (emphasis supplied). The jury obviously believed the children.

Appellant's argument that there is no physical evidence of sexual abuse is without merit. In *State v. Wrightington,* 323 N.W.2d 793 (Minn.1982), the court found the evidence sufficient to sustain the appellant's rape conviction despite the absence of *any* sexual assault examination. The court noted that absence of this factor was not controlling since the victim's testimony was positive and consistent. *Id.* at 794. In *Myers,* evidence supporting the appellant's conviction for second degree criminal sexual assault was also held sufficient even though the record contained no evidence of physical corroboration. *Myers,* 359 N.W.2d at 608. Finally, in *Whelan,* the court stated that the "absence of a physical examination does not prevent the jury from finding defendant guilty." *Whelan,* 291 Minn. at 85, 189 N.W.2d at 173.

Appellant's subsidiary argument, that evidence of sexual penetration was required, ignores the language of the statute under which he was convicted. Minn.Stat. § 609.-3642, subd. 1(1) and 1(2)(a) require "sexual contact." This term excludes a requirement of penetration:

> "Sexual contact" includes any of the following acts committed without the complainant's consent for the purpose of satisfying the actor's sexual or aggressive impulses, except in those cases where consent is not a defense:
>
> (i) The intentional touching by the actor of the complainant's intimate parts, or
>
> (ii) The touching by the complainant of the actor's, the complainant's, or another's intimate parts effected by coercion or the use of a position of authority, or by inducement if the complainant is under 13 years of age or mentally defective, or
>
> (iii) The touching by another of the complainant's intimate parts effected by coercion or the use of a position of authority, or
>
> (iv) In any of the cases above, of the clothing covering the immediate area of the intimate parts.

Minn.Stat. § 609.341, subd. 11 (1984). Appellant argues that a reasonable jury could not conclude he was guilty when the only direct evidence of sexual abuse was provided by child witnesses.

■ Plainly, this was not the only evidence presented at trial to support his conviction. When the testimony of the defendant and the victim differ sharply, the jury is entitled to believe the victim's account. *State v. Heinzer,* 347 N.W.2d 535 (Minn.Ct. App.1984), *pet. for rev. denied,* (Minn. July 26, 1984). Weighing the credibility of the witnesses is within the exclusive province of the jury and will not be second guessed by an appellate court. *State v. Pieschke,* 295 N.W.2d 580, 584 (Minn.1980).

■ *2. Ineffective Assistance of Counsel.* The proper standard for reviewing a claim of ineffective assistance of counsel was recently established by the Supreme Court:

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

\*   \*   \*   \*   \*   \*

\* \* \* the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. *Strickland v. Washington*, 466 U.S. 668, ——, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984). Even if an attorney makes an error that is deemed professionally unreasonable, a conviction cannot be overturned unless the appellant shows:

[T]here is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Id.* at ——, 104 S.Ct. at 2068; *State v. Spencer*, 366 N.W.2d 656 (Minn.Ct.App. 1985), *pet. for rev. denied*, (Minn. July 11, 1985). In considering this allegation, a reviewing court presumes that counsel's conduct falls within a wide range of reasonable professional assistance. *Strickland*, 466 U.S. at ——, 104 S.Ct. at 2065–66.

Recent decisions in this jurisdiction have clearly stated that an appeal from a conviction is an inappropriate method for raising ineffective representation by counsel. *State v. Cermak*, 350 N.W.2d 328, 332 n. 5 (Minn.1984); *State v. Hanson*, 366 N.W.2d 377, 379 (Minn.Ct.App.1985). The preferred method of raising this issue is through a post-conviction proceeding as provided under Minn.Stat. § 590.01–.06 (1984). *See Cermak.* The preference is based on the fact that reviewing courts do not have the benefit of all facts surrounding defense counsel's motivation to act in a certain way. *Hanson*, 366 N.W.2d at 379.

Appellant's claims of ineffective counsel appear to fall into two categories: (1) lack of objections to specified testimony; and (2) inappropriate use of character evidence.

(a) *Objections.* Appellant first argues that the mother was impermissibly allowed to incorporate the statements of Craig Sorenson and the medical conclusions of Dr. Zaph into her own testimony:

Q What was the nature of the conversation with Mr. Sorenson?

A I was telling him my concerns, the girls' behavior, and he told me that I should bring them to a doctor and get them checked to see if there was sexual abuse going on, which I did.

\*    \*    \*    \*    \*    \*

Q What did Dr. Zaph do in response to your concerns?

A He examined [K.J.] and he said that there was not any deep penetration, is what he said, but he said to keep watching them because there is some different ways of abuse that could not be detected by a doctor.

■ Even if both statements qualified as hearsay under Minn.R.Evid. 801(c), neither statement can be said to have prejudiced the outcome. First, Sorenson testified that he could not recall telling the mother to seek medical advice although it was possible that he did. In effect, his testimony impeached the mother's testimony. Since the defense theory centered on fabrication, the lack of an objection could have been part of defense counsel's strategy.

With regard to Dr. Zaph's statement, appellant ignores two central facts. First, the mother was cross-examined about the statement and admitted that Dr. Zaph found no evidence of physical abuse. Second, Dr. Zaph's statement was stipulated to by the parties and incorporated this exculpatory information. In *Hanson*, counsel's stipulation to a hearsay statement that was partly exculpatory was deemed to be trial strategy. *Hanson*, 366 N.W.2d at 379.

■ Appellant further argues that the mother was impermissibly allowed to testify that the children were angry at their father and hated him. These statements did not prejudice the outcome. A reasonable jury could have drawn the same inference from the children's testimony.

■ (b) *Character Evidence.* Appellant now argues that his defense counsel, while cross-examining the mother, impermissibly referred to his menacing her with a gun, his assault on her while intoxicated and his arrest due to a bench warrant. Since the defense theory centered on fabrication, it is possible that defense counsel's reference to these incidents was part of an overall strat-

egy to prove bitter feelings between the mother of these children and appellant.

Ordinarily, Minn.R.Evid. 404(a)(1) provides that evidence of a defendant's character may not be brought out at trial unless he places his character in issue. However, this line of questioning was not initiated by the prosecution. Appellant offered character evidence during his own case in chief. More significantly, the trial court gave a limiting instruction to the jury on this point:

> The defendant is not being tried for and may not be convicted of any crime other than the crimes charged in this complaint. *You are instructed specifically that you are not to convict the defendant on the basis of any occurrence on April 12, 1982, at the Folley home in Zimmerman.* To do so might result in unjust, double punishment. (emphasis supplied)

The weight of all this evidence was for the jury to decide.

### DECISION

The evidence presented at trial was legally sufficient to support appellant's conviction for intrafamilial sexual abuse. Appellant was not denied effective assistance of counsel.

Affirmed.