**STATE of Minnesota, Respondent,**

v.

**Ruben GAMEZ, Appellant.**

**No. C0-92-845.**

Court of Appeals of Minnesota.

Dec. 29, 1992.

Review Denied Feb. 23, 1993.

Considered and decided by RANDALL, P.J., and DAVIES and FLEMING,* JJ.

## OPINION

WILLIAM J. FLEMING, Judge.

Appellant Ruben Gamez challenges the sufficiency of the evidence to support his conviction on two counts of third degree criminal sexual conduct in violation of Minn.Stat. § 609.344, subd. 1(c) (1990). We conclude that the evidence is sufficient for conviction and affirm the trial court.

## FACTS

Complainant T.J.S. is the unmarried sister-in-law of appellant Ruben Gamez. Early in the morning of June 27, 1991, while staying with his wife in complainant's condominium, appellant went to T.J.S.'s bedroom, awakened her, and asked for a towel to wipe down the bathroom walls after his shower. Appellant then crossed the floor to the bed, knelt on the bed, and gave T.J.S. an ardent kiss and hug. T.J.S. next remembers standing in the bathroom door with appellant forcing himself on her. Appellant locked the bathroom door leading into T.J.S.'s bedroom.

Appellant pulled T.J.S.'s nightgown over her shoulders and pushed up her bra. Appellant had a frightening look on his face. T.J.S. tried to push appellant away by his shoulders and told appellant that they could not do this because he is her brother-in-law. T.J.S. stated that they could not hurt her sister. She thought that if she kept saying "you're my brother-in-law" and his wife's name, appellant would stop.

T.J.S. testified that she did not consent to the intercourse. She did not yell for her sister, who was asleep in the next bedroom, because she did not want her sister to know what appellant was doing. T.J.S. thought that this would destroy her sister and their close relationship. T.J.S. could not hurt her sister. She knew that it would be her word against appellant's and that appellant would have a story.

Hubert H. Humphrey, III, Atty. Gen., Wm. F. Klumpp, Jr., Asst. Atty. Gen., St. Paul, Raymond F. Schmitz, Olmstead County Atty., Rochester, for respondent.

Jack S. Nordby, Meshbesher & Spence, Ltd., Minneapolis, for appellant.

* Retired judge of the district court, serving as judge of the Court of Appeals by appointment

pursuant to Minn. Const. art. VI, § 2.

Again, early in the morning of June 28, 1991, T.J.S. was in bed asleep when she discovered appellant, who was nude, in bed with her and pulling at her shoulder. T.J.S. told appellant to leave her alone. She kept struggling and pushing appellant away. Appellant put his hands between her legs, laid on top of her, and proceeded to have intercourse. T.J.S. was frightened by the look on appellant's face. T.J.S. did not want to hurt her sister so she was quiet during the assault.

T.J.S. sobbed and shook while telling two of her sisters about appellant forcing himself on her. T.J.S. still did not want their sister, appellant's wife, to know because she was afraid it would hurt her. With the encouragement of her sisters, T.J.S. told appellant's wife about the assault. Later, when appellant's wife told her sisters that appellant denied everything, T.J.S. became hysterical and out of control and injured her finger.

T.J.S. saw Dr. Margaret Houston for her injured finger. When the doctor asked T.J.S. how she injured her finger, T.J.S. cried when telling about the assault. T.J.S. said that she had been afraid to do anything while appellant was assaulting her because her sister would hear.

Appellant admitted to engaging in sexual intercourse with T.J.S., but stated that it was consensual.

## ISSUES

1. Was the evidence sufficient to prove that appellant committed third degree criminal sexual conduct?

2. Should the trial court have submitted the lesser included offenses of fourth and fifth degree criminal sexual conduct to the jury?

3. Did the trial court properly admit witness testimony which corroborated the complainant's testimony and her prompt reporting of the sexual assault by appellant?

4. Was appellant prejudiced by testimony regarding statements made by him about a prosecution witness's disabled child?

5. Was it prejudicial error for the trial court judge to tell the jury that he would be unavailable for personal consultation if their deliberation continued into the evening hours?

## ANALYSIS

### I.

On appeal, a review of the sufficiency of the evidence is limited to determining whether the facts in the record and the legitimate inferences drawn from these facts could allow a jury to reasonably conclude that the defendant was guilty of the offense charged. *State v. Merrill,* 274 N.W.2d 99, 111 (Minn.1978). The evidence is viewed in the light most favorable to the verdict, assuming the jury believed the state's witnesses and disbelieved any contrary evidence. *State v. Lanam,* 459 N.W.2d 656, 662 (Minn.1990), *cert. denied,* 498 U.S. 1033, 111 S.Ct. 693, 112 L.Ed.2d 684 (1991). Reviewing the evidence in a manner favorable to the verdict is particularly important where the resolution of the case depends on conflicting testimony, because the weighing of the credibility of the witnesses is the exclusive function of the jury. *State v. Pieschke,* 295 N.W.2d 580, 584 (Minn.1980).

Appellant argues that T.J.S.'s testimony was not credible and there was a lack of corroborating evidence. In a sexual assault case, the complainant's testimony need not be corroborated. Minn.Stat. § 609.347, subd. 1 (1990). Additionally, while appellant's testimony conflicts with T.J.S.'s testimony, T.J.S.'s testimony regarding the sexual assaults is credible where the testimony was corroborated by her consistency in telling of the assaults, her prompt reporting of the assaults, and her emotional state when reporting the assaults.

T.J.S. told two of her sisters about the sexual assaults two days after the first incident and one day after the second incident. She then repeated her story to her third sister, appellant's wife, the following day. The next day, T.J.S. repeated the story to Dr. Houston. T.J.S. consistently

related how appellant came into her bedroom while she was sleeping. She tried to push appellant away, but he continued to assault her. *See State v. Folley*, 378 N.W.2d 21, 25 (Minn.App.1985) (detailed and consistent description of sexual abuse is important factor in corroborating victim's testimony).

When T.J.S. told her sisters about the sexual assaults, she was sobbing and shaking. When she found out that appellant denied the assaults, she lost control and was hysterical. One of her sisters testified that T.J.S. did not usually behave in this manner. T.J.S. also spoke of suicide to her sisters and Dr. Houston. *State v. Mosby*, 450 N.W.2d 629, 635 (Minn.App.1990) (emotional state after sexual assaults provides corroboration), *pet. for rev. denied* (Minn. Mar. 16, 1990).

Appellant also argues that there is a lack of evidence showing force or coercion required for a conviction for third degree criminal sexual conduct. Coercion is defined as

> words or circumstances that cause the complainant reasonably to fear that the actor will inflict bodily harm upon, or hold in confinement, the complainant or another.

Minn.Stat. § 609.341, subd. 14 (1990). There is evidence of coercion where an abuser intentionally creates an atmosphere of fear. Here, appellant continued his sexual advances after T.J.S. told him to stop. Appellant also pulled up T.J.S.'s nightgown and held her down during the sexual assault. *See State v. Meech*, 400 N.W.2d 166, 168 (Minn.App.1987) (conviction for third degree criminal sexual conduct where complainant was fearful and overpowered by appellant saying "shut up," pushing up her nightgown, and holding her hands down during sexual assault).

During the first incident where appellant forced himself on her, T.J.S. tried to push appellant away. T.J.S. was frightened by the "crazed" look on his face. Appellant pulled T.J.S.'s nightgown over her shoulders and pushed up her bra. When appellant and T.J.S. were in the bathroom, appellant locked the bathroom door leading into T.J.S.'s bedroom. Although T.J.S. repeatedly told appellant that this was not right because he was her brother-in-law, appellant did not stop. Appellant said, "It's been so long," and told T.J.S. that her sister was married to a sex-starved or sex-craved man.

During the second incident, T.J.S. was in bed sleeping with her back to the door when appellant crawled under the bed covers and kept pulling at T.J.S.'s shoulder. T.J.S. kept trying to push appellant away. She told appellant to "just leave me alone." Appellant put his hands between T.J.S.'s legs, laid on top of her, and sexually assaulted her. Again, T.J.S. was frightened by the look on appellant's face. She was afraid that no matter what she said or did, appellant would assault her. *See State v. Winship*, 355 N.W.2d 324 (Minn.App.1984) (conviction for third degree criminal sexual conduct where complainant only consented to back rub, asked appellant to leave several times, appellant pinned complainant down and sexually assaulted her), *pet. for rev. denied* (Minn. Jan. 14, 1985).

## II.

We have considered and found no merit in appellant's claims of other errors. Appellant neither requested that the jury charge contain the lesser included offenses nor objected to their absence from the charge. Generally, we will not address an argument not made to the trial court. *See State v. Gullekson*, 383 N.W.2d 338, 340–41 (Minn.App.1986), *pet. for rev. denied* (Minn. May 16, 1986).

The trial court did not abuse its discretion in allowing corroborating testimony. Also, neither witness testimony nor the prosecutor's comments were prejudicial. Finally, having considered the trial court's remarks in their entirety, we conclude that the trial court comment about which appellant complains was not prejudicial. *See generally* Minn.R.Crim.P. 31.01 (harmless error to be ignored).

## DECISION

The evidence is sufficient to affirm appellant's jury convictions for criminal sexual conduct in the third degree.

Affirmed.

DAVIES, Judge (dissenting).

I respectfully dissent.

We have here an incident of non-consensual intercourse. The complainant had a right to say "no" and her protestations should have been respected by appellant.

But criminal sexual conduct in the third degree is not defined simply as sexual intercourse without consent. It involves more; as charged in this case it involves penetration "caused by force or coercion." Because that is not what happened, the conduct of the appellant does not fulfill the elements of third degree sexual conduct.

Both "force" and "coercion" are defined in the statute. The state, conceding that "force" was not present, sought to prove "coercion." "Coercion," *as defined,* is thus an essential element of the crime.

> "Coercion" means words or circumstances that cause the complainant reasonably to fear that the actor will inflict bodily harm upon, or hold in confinement, the complainant or another, or force the complainant to submit to sexual penetration or contact, but proof of coercion does not require proof of a specific act or threat.

Minn.Stat. § 609.341, subd. 14 (1990). Relevant to my concern is that there must be something to "cause the complainant *reasonably* to fear that the actor" will inflict bodily harm upon the complainant. That requirement was not met in the circumstances of this case.

Here, there was intercourse between appellant and complainant in complainant's condominium unit on consecutive nights, a Thursday and Friday. Appellant pressed himself upon complainant, who was his wife's sister. It is undisputed that appellant's wife was in an adjoining room on both occasions. All testimony, including that of the complaining witness, establishes without doubt that rescue was a shout away throughout both incidents; by raising her voice and calling for help, the complainant could have stopped appellant in an instant.[1]

Complainant's explanation for not calling out to her sister is that she "did not want to embarrass her." Complainant's admitted choice was between being a victim of unwanted sexual relations or causing embarrassment. Complainant's testimony established that what she feared was embarrassment. *Fear of embarrassment is not fear of "bodily harm."*

The conduct here may fall within the definition of criminal sexual conduct in the fifth degree; but the defendant was not convicted of that crime.

Few principles are more firmly established in the jurisprudence of Minnesota and other American states than that a crime must be defined by the legislature. That idea is expressed by Minn.Stat. § 609.015, subd. 1 (1990).

> Common law crimes are abolished and no act or omission is a crime unless made so by this chapter or by other applicable statute * * *.

Further, penal statutes are to be construed strictly and any reasonable doubt must be interpreted in favor of the defendant. This is true both under the Minnesota Constitution and the United States Constitution. *State v. Layman,* 376 N.W.2d 298, 300 (Minn.App.1985), *pet. for rev. denied* (Minn. Jan. 17, 1986); *State v. Corbin,* 343 N.W.2d 874, 875–76 (Minn.App.1984); *see Wisniewski v. United States,* 247 F.2d 292, 295 (8th Cir.1957).

In *State v. Small,* 29 Minn. 216, 12 N.W. 703 (1882), the Minnesota Supreme Court held that penal statutes are specifically and clearly described and provided for. The reason for the rule is that the law will not allow constructive offenses or arbitrary punishment. Similarly, a criminal offense should never be created by an uncertain and doubtful construction of a statute. That has been the law in Minnesota since territorial days. *See United States v. Gideon,* 1 Minn. 292, 1 Gil. 226 (1857).

---

**1.** The majority reliance on *State v. Meech,* 400 N.W.2d 166, fails. There the victim was in her house alone.

Thus, in this case the precise words of Minn.Stat. § 609.344, subd. 1(c), are the measure of the crime. By charging criminal sexual conduct in the third degree, and no other crime, the state cast the die on whether it could prove the elements of sexual conduct in the third degree, as legislatively defined. It did not.

Instead, the state proved the complainant could not reasonably have feared that the actor had the present ability to "inflict bodily harm or hold in confinement" when he was armed only with a "scary face," and when all she had to do was raise her voice to be rescued.

I would reverse.