14

STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. R.W.,
DEFENDANT-RESPONDENT.

Argued March 4, 1986—Decided September 23, 1986.

*Greta-Ann Gooden,* Deputy Attorney General, argued the cause for appellant (*W. Cary Edwards, Jr.,* Attorney General of New Jersey, attorney).

*Seymour Margulies* argued the cause for respondent (*Margulies, Margulies & Wind,* attorneys; *Clifford A. Herrington,* on the briefs).

The opinion of the Court was delivered by

HANDLER, J.

The defendant in this case was convicted of sexual offenses against his infant daughter. The appeal calls upon us to consider sensitive and delicate issues surrounding the crime of incest and the sexual abuse of children. When the child-victim is the only witness to such crimes, as is often the case, the verdict hinges on the testimony of the child. Complicating further the quest for truth, prosecutions of incestuous sexual offenses often occur against a background of bitter animosity between the parents of the child, frequently in the context of hateful divorce and custody battles, with each parent inevitably exerting influence on the child. Normal concerns touching upon the child's reliability as a witness are understandably heightened in such a setting. Defendants, attempting to investigate and perhaps impugn the child's competence or credibility, often request that the child submit to psychiatric or psychological testing. This case requires a determination of when it is appropriate for a court to heed such a request.

## I.

The parents in this appeal, the defendant, R.W., and his wife, C.W., were married in 1977. (Initials are used to refer to the principal parties in order to protect the identity of the infant child). R.W. is a self-employed piano tuner. C.W. works with autistic children and understands behavior modification. R.E.W. was born to the couple in March of 1980. She was raised in an open manner, one in which there were no inhibitions regarding nakedness, and was taught the proper names for the anatomy. Both parents would bathe R.E.W., but it was routine for her to bathe with her father, a practice initiated by the mother.

Marital discord developed between the parents, and C.W., on December 1, 1982, left the marital home with R.E.W. The couple agreed to share custody, with R.W. allowed custody Friday evenings through Tuesday mornings.

According to C.W., several incidents led her to conclude that when R.E.W. stayed with R.W., they would play various sexual games together in bed. The first incident occurred in March, 1983, when R.E.W., after returning from a weekly stay with R.W., had a tantrum that C.W. thought was unusually intense and lengthy. Following the tantrum, R.E.W. made a statement that indicated sexually bizarre conduct by R.W. Shortly afterwards, C.W.'s sister, the child's aunt, informed C.W. that R.E.W., while bathing with her, made some peculiar comments that indicated sex-laden play on the part of R.W. The final incident occurred one evening when C.W. noticed that R.E.W.'s vagina was red and swollen after a weekend visit with her father; questioning of the child by C.W. suggested that R.W. had had intercourse with his three-year-old daughter. A physical examination by a physician the following day revealed no evidence of sexual abuse. However, in the presence of the doctor and others, including the police, R.E.W. physically demonstrated, with the aid of an anatomically correct doll, the sexual acts in which defendant had her engage.

These incidents resulted in an investigation, after which defendant was indicted in Monmouth County for three offenses: aggravated sexual assault, *N.J.S.A.* 2C:14–2(a)(1); sexual assault, *N.J.S.A.* 2C:14–2(b); and endangering the welfare of a three-year-old, *N.J.S.A.* 2C:24–4(a). Defendant pleaded, not guilty to the indictment.

Defense counsel made two pretrial motions to compel the psychiatric or psychological testing of R.E.W. The first motion was "to determine whether a 3 year old child, now in excess of 3½ years does have competence to be a witness under the standards set forth in Rule 17 of the New Jersey Rules of Evidence." The second supplementary motion was "to determine whether an infant of that age would in all psychiatric or psychological probability have sensory and/or mental defects that would be relevant in assessment of that witness' credibility." Informed by defense counsel that the child did not suffer from a "learning disability or anything of that nature," the trial

court denied the motions, concluding that it would not need the help of a psychiatrist or psychologist in determining a young child's competency.

At trial, immediately preceding R.E.W. taking the stand, the trial judge conducted a hearing in which he questioned R.E.W. regarding her ability to tell the truth. R.E.W. equated truthfulness with telling what was "real" and lying with telling that which was "pretend"; she also indicated that she knew she would get into trouble if she did not tell the truth. Defense counsel also questioned the child, and then argued that she was incompetent to serve as a witness. The trial judge rejected defense counsel's contentions, concluding, "I'm satisfied she's competent to testify, that she understands the concept of the oath and what it is to tell the truth, that there is no need to swear her on the Bible and that she's qualified to testify."

Later, in the course of the trial, R.E.W. testified as a witness. She was able to relate her name, age, the school she attended, and her teacher's name. She also plainly described the acts of sexual conduct that were the subject of the charges. At the close of the State's case, the aggravated assault charge was dismissed because of insufficient evidence of penetration.

Defendant on his case denied the accusations made against him. He indicated that since the separation from his wife there was great hostility between them. The jury found defendant guilty of sexual assault and endangering the welfare of a minor. Defendant was thereafter sentenced to concurring terms of seven years with a three-year parole ineligibility provision on the former conviction and four years on the latter.

On appeal the Appellate Division reversed the convictions and remanded for a new trial. 200 *N.J.Super.* 560 (1985). In relevant part the Appellate Division held that the trial court should have allowed a psychological and psychiatric examination in determining the competency of the infant to testify as a witness.

The State filed a petition for certification seeking review of the Appellate Division's order for psychiatric testing of R.E.W., as well as a review of two other reversible errors relating to improper jury influence.[1] Certification was denied. 101 *N.J.* 314 (1985). The State then petitioned for rehearing only as to the issue of the psychiatric examination of the infant, R.E.W. This was later supplemented with a request that this Court reconsider its denial of the two other grounds because the State was unable to retry the defendant due to the inability of the infant now to recall the alleged sexual abuse. The motion for reconsideration together with the petition for certification was granted, limited solely to the issue involving the pretrial psychiatric or psychological examination of R.E.W. 101 *N.J.* 206 (1985).

## II.

The general rule is that all persons are qualified to testify as witnesses, so long as they are competent to do so. *See Evid. R.* 7. The determination of whether a person is competent to serve as a witness lies within the discretion of the court. *See State v. Butler*, 27 *N.J.* 560, 602 (1985); *State v. Gambutti*, 36 *N.J.Super.* 219, 223 (App.Div.1955). At common law, a court would determine whether the witness "[has] sufficient capacity to observe, recollect and communicate with respect to the matters about which he is called to testify, and ... understand[s] the nature and obligations of an oath." *State v.*

---

[1] During the trial and in the presence of the jury the judge told the child that she would get an ice cream if she said what was "real." At the conclusion of her direct examination the infant refused to testify on cross-examination without the ice cream, which was given to her in the presence of the jury. The Appellate Division ruled that this action, as well as the trial court's refusal to forbid the jury from watching a current television show concerning incest, constituted reversible error. Neither of these asserted errors is involved in this appeal, but we state without hesitation that the trial judge abused his discretion by promising the child ice cream and in subsequently giving it to her, thereby suggesting to the jury, albeit inadvertently, that the infant had indeed testified truthfully.

*Butler, supra,* 27 *N.J.* at 602. Similar standards of discretion have been incorporated into the New Jersey Rules of Evidence. The operative rule of evidence provides:

A person is disqualified to be a witness if the judge finds that (a) the proposed witness is incapable of expressing himself concerning the matter so as to be understood by the judge and jury either directly or through interpretation by one who can understand him, or (b) the proposed witness is incapable of understanding the duty of a witness to tell the truth. [*N.J. Rules of Evidence* 17 (Anno.1986).]

The broad reliance on the discretion of the trial court and the standards governing individual competency determinations does not change when the proposed witness is youthful. In *State in the Interest of R.R.,* 79 *N.J.* 97 (1979), where a four year old sodomy victim was the only witness to the crime, we emphasized that the trial court is entrusted to make a competency determination based on its *voir dire* examination of the witness and "the entire record—including the testimony in fact given by the witness under oath—in order to arrive at its decision." *Id.* at 113. We noted further that disqualification is warranted only if the trial judge finds that the proposed witness is incapable of expressing himself or herself concerning the matter so as to be understood by the judge and jury or the proposed witness is incapable of understanding the duty of a witness to tell the truth. *Id.* at 112–13. *See Evid.R.* 17. We held specifically that age *per se* cannot render a proposed witness incompetent.[2]

---

[2]This holding is buttressed by clinical evidence that children of the tenderest ages are capable of testifying accurately about the nature of the abuse and the identity of the abuser. *See* Jones, *et al.,* "Can A Three-Year-Old Child Be a Witness to Her Sexual Assault and Attempted Murder?" 10 Child Abuse and Neglect 253 (1986) (case study of detailed recall of 3-year-old whose version of events was corroborated in the accused's confession); Melton, "Children's Competency to Testify," 5 Law & Hum.Behav. 73, 76–77 (1981) (citing studies showing that children remember specific facts as well as adults); Eatman, "Minor Victims of Sexual Assault," 26 N.H.Bar J. 199, 202–03 (1985) (traditional skepticism of children's capacity and veracity "either unsupportable or greatly oversimplified"). *Cf.* A. Yarmey, *The Psychology of Eyewitness Testimony* (1979), at 204–05 (arguing that children possess inferior memories), *cited in*

Inherent in the trial court's discretion to qualify a witness as competent is the power to have the individual submit to psychiatric or psychological evaluation for the purpose of aiding the court's determination. *State v. Butler, supra,* 27 *N.J.* at 601. However, the exercise of this power is neither frequent nor common, and never lightly undertaken. It is an unusual situation that impels the grant of a psychiatric examination as a precondition to a determination of competence. The practice of granting psychiatric examinations of witnesses "must be engaged in with great care" and "only upon a substantial showing of need and justification." *Id.* at 605.

The issue as it was actually presented to the trial court in this case was whether the age alone of the witness, R.E.W., constituted a sufficient ground for ordering a psychiatric examination. The Appellate Division, while recognizing that a witness is not by reason of age alone disqualified as a witness, nevertheless ruled that a child of 3½ should undergo psychiatric testing to determine competency. The court stated,

> there may be serious questions as to both the ability of an infant of tender years to recall the events and her testimonial capacity to narrate them. Thus we are convinced that fundamental fairness required that defendant be granted the examinations so he could develop evidence with respect to the infant's testimonial capacity. In *State v. Butler, supra,* 27 *N.J.* at 560 and *State v. Franklin, supra,* 49 *N.J.* [286] at 286 [(1967)], the court determined that there was substantial need for psychiatric examinations addressed to the testimonial capacity of proposed witnesses who had suffered from mental disorders. We think that the need is no less when the infant witness is of such tender years as the infant here. [200 *N.J.Super.* at 568–69.]

The court also stated, without ruling on the facts before it, that "in some circumstances expert testimony similarly could aid a jury in determining what credibility to afford to the testimony of an infant of tender years." *Id.* at 569. In light of a record that proffered age as the sole basis for a finding of incompetence, the Appellate Division's determination can be interpreted to mean that "tender years" could be considered similar to

---

Note, "The Testimony of Child Victims in Sex Abuse Prosecutions: Two Legislative Innovations," 98 Harv.L.Rev. 806, 807 n. 10 (1985).

"mental disorders" and constitute "substantial need for psychiatric examinations." This is not a sound or accurate perception of the governing legal principles that control determinations of witness competency.

█ In order to satisfy the "substantial need" criterion for a psychiatric examination, there must be a showing of some deviation from acceptable norms, such as an identifiable or clinical psychiatric or similar disorder, beyond the realm of those human conditions that ordinary experience would confirm as normal. For example, in *Butler,* cited by the Appellate Division in this case, a psychiatric/psychological evaluation was ordered because there was evidence presented of the proposed witness's mental derangement, denominated as "chronic brain syndrome associated with convulsive disorder, with behavior reaction," as well as state psychiatric reports. *State v. Butler, supra,* 27 *N.J.* at 572. These proofs raised the requisite doubt as to the appropriate mental capacity of the proposed witness. In *State v. Franklin,* 49 *N.J.* 286 (1967), also cited by the Appellate Division, the court required that the principal state witness undergo a mental examination so that the defense could challenge her competency because the witness had once been committed to a mental institution and the lower court had earlier appointed a psychiatrist, reflecting previous doubt on the issue of competency. *Id.* at 288.

█ There is no reason to deviate from this general approach when the witness is youthful. Psychiatric testing on the issue of witness competency is an extraordinary measure. Trial courts, in the exercise of their discretion, should determine whether there is a "substantial need" for psychiatric testing in order to aid in the assessment of witness reliability. Consequently, there must be some persuasive evidential showing to establish such a need. Toward this end, the party requesting the testing must present evidence reasonably indicating something peculiar, unique, or abnormal about the young witness that would influence the witness's competence or the court's

ability to assess that competence, or raise unusual difficulties in assessing the witness's credibility. The person's age as such is not "peculiar," "unique," or "abnormal;" rather age is simply a dimension, a constituent aspect of human personality, and its bearing on individual conduct is part of our common experience. In light of our proscription of the use of age to disqualify a witness and our caution that psychiatric examinations be based on a substantial need, age *per se* cannot serve as a basis for ordering psychiatric testing for purposes of determining witness competency.

Other jurisdictions have uniformly concluded that extreme youth alone cannot support subjecting a child-witness to psychiatric or psychological testing for purposes of determining competency. *See, e.g., State v. Jerousek,* 121 *Ariz.* 420, 590 *P.*2d 1366 (1979); *Kitchen v. State,* 271 *Ark.* 1, 607 *S.W.*2d 345 (1980); *People v. Estorga,* 200 *Colo.* 78, 612 *P.*2d 520 (1980); *People v. Piro,* 671 *P.*2d 1341 (Colo.Ct.App.1983); *People v. King,* 41 *Colo.App.* 177, 581 *P.*2d 739 (1978); *McDonald v. State,* 307 *A.*2d 796 (Del.1973); *People v. Brewer,* 127 *Ill.App.* 3d 306, 82 *Ill.Dec.* 462, 468 *N.E.*2d 1242 (1984); *Stanton v. State,* 428 *N.E.*2d 1203 (Ind.1981); *Holder v. State,* 272 *Ind.* 52, 396 *N.E.*2d 112 (1979); *State v. Gregg,* 226 *Kan.* 481, 602 *P.*2d 85 (1979); *Commonwealth v. Widrick,* 392 *Mass.* 884, 467 *N.E.* 2d 1353 (1984); *Commonwealth v. Jimenez,* 10 *Mass.App.* 441, 409 *N.E.*2d 204 (1980); *State v. Sullivan,* 360 *N.W.*2d 418 (Minn.Ct.App.1985); *State v. McCafferty,* 356 *N.W.*2d 159 (S.D. 1984); *State v. Wounded Head,* 305 *N.W.*2d 677 (S.D.1981); *State v. Lairby,* 699 *P.*2d 1187 (Utah 1984). *See generally,* Annot., 45 *A.L.R.*4th 310 (1986) (surveying cases).

These courts have emphasized that credible and substantial evidence indicating potential incompetence must be presented before such an examination will be ordered. For instance, in *State v. Lairby, supra,* 699 *P.*2d 1187, the Utah Supreme Court stated that a "substantial doubt" as to the witness's mental condition must be raised to support an order of psychological evaluation. Since the defendant in that case presented no

evidence that the four-year-old victim of incest had any history of mental problems or had previously acted out any of her mother's alleged hostilities toward her father or exhibited any behavior unusual for a four-year-old other than an active imagination, the court ruled that the trial court had not abused its discretion in denying defendant's request for psychological testing. *Id.* at 1198. Similarly, in *State v. Gregg, supra,* 226 *Kan.* 481, 602 *P.*2d 85, the Kansas Supreme Court held that the trial judge may order a psychiatric examination if a "compelling reason" is shown. In upholding the trial court's denial of defendant's request for a psychiatric examination of the victim in that case, the court found that the child's age, the seriousness of the crime, and the lack of substantial corroborating evidence did not constitute such a "compelling reason." *Id.* at 490, 602 *P.*2d at 92. *See also People v. Piro, supra,* 671 *P.*2d 1341 (no compelling reason to order psychiatric examination of the 13-year-old victim of sexual assault who did not initially report the incident to the authorities, had allegedly made false reports of improper sexual conduct in the past, was undergoing therapy and gave testimony at a preliminary hearing that was inconsistent with the report that she gave to the investigating officer); *People v. Brewer, supra,* 127 *Ill.App.*3d 306, 82 *Ill. Dec.* 462, 468 *N.E.*2d 1242 (psychiatric examination of seven-year-old (nine at trial) victim of sexual abuse perpetrated by victim's stepfather not warranted because victim did poorly in school or became confused under cross-examination); *People v. Visgar,* 120 *Ill.App.*3d 584, 75 *Ill.Dec.* 784, 457 *N.E.*2d 1343 (1983) (child-witness's past stay in psychiatric ward and previous allegations of sexual misconduct by defendant-stepfather do not constitute compelling need supporting psychiatric examination); *Holder v. State, supra,* 272 *Ind.* at 54, 396 *N.E.*2d at 113 (nine-year-old rape victim's use of slang terms for genitals and intercourse was not sufficient to order a psychiatric examination and "the age of the witness does not, of itself, necessarily obligate the court to order an examination").

■ It follows of course that absent persuasive evidence of potential incompetence, mere allegations of a disorder or unusual condition bearing upon competence do not constitute a sufficient showing to justify a psychiatric examination. In *People v. King, supra,* 41 *Colo.App.* 177, 581 *P.*2d 739, the appellate court upheld the trial court's denial of defendant's request to subject the ten-year-old victim of sexual assault to a psychiatric examination, holding:

> [H]ere, the only support for defendant's motion was his affidavit alleging that the victim was "mentally immature," had a "vivid imagination," and is "subject to flights of fancy," and that he had "observed that the complainant has fantasies concerning sexual contact and relationships." These statements are conclusory in nature and are devoid of specific factual recitation. [*Id.* at 179, 581 *P.*2d at 741.]

*See also Kitchen v. State, supra,* 271 *Ark.* at 9–15, 607 *S.W.*2d at 351–54 (allegations that the 15-, 13-, and 11-year-old victims of the sex crimes perpetrated by their mother's husband were pathological liars and mentally incompetent not sufficient to require them to submit to psychiatric examinations).

In the same vein of authority are cases in which an unusual condition bearing upon witness reliability, such as the influence of one parent over the child-witness, must be substantiated in order to constitute a basis for subjecting the child to a psychiatric examination. In *State v. Sullivan, supra,* 360 *N.W.*2d 418, a case with facts similar to the present matter, defendant requested a psychiatric examination of the four-year-old (five at trial) victim of incest, alleging that the defendant's former wife had fabricated the crime and had manipulated their son into believing that it had happened on account of the bitterness of their divorce and subsequent custody battle. The appellate court upheld the trial court's denial, finding these allegations insufficient to justify the grant of defendant's motion. *Id.* at 423. *See State v. Lairby, supra,* 699 *P.*2d 1187.

It is instructive to note that in cases in which such examinations have been allowed, the court had before it expert testimony regarding some abnormality or peculiarity of the victim, usually manifested by some unusual antecedent condition or

behavior.  In *State v. Roberts,* 139 *Ariz.* 117, 677 *P.*2d 280 (App.1983), for example, the State alleged that the defendant had sexually abused a 9-year-old mildly retarded girl.  The trial court denied defendant's motion to call a psychologist who had previously concluded based on prior examinations that the child was incompetent.  The appellate court reversed because "the offer of proof was based upon a series of test results which showed an organically based learning disability and an unusual preoccupation with fantasies of hostility and violence, including ideas that men and women hurt each other."  *Id.* at 122, 677 *P.* 2d at 285.

■  Understandably, when such testing has a reasonable probative bearing upon an infant witness's competency or credibility, it may be sought, and its results proffered, on an adequate showing, by the proponent of the child's testimony, as well as by the defendant.  In *State v. Myers,* 359 *N.W.*2d 604 (Minn.1984), the Minnesota Supreme Court reviewed an incest prosecution in which a doctor had testified concerning the characteristics of abused children, including testimony that sexually abused children often will not report the abusive incidents.  The court affirmed the use of the testimony, stating:

> With respect to most crimes the credibility of a witness is peculiarly within the competence of the jury, whose common experience affords sufficient basis for the assessment of credibility.  In most cases, even though an expert's testimony may arguably provide the jury with potentially useful information, the possibility that the jury may be unduly influenced by an expert's opinion mitigates against admission.  Nor should the credibility of witnesses in criminal trials turn on the outcome of a battle among experts.  The nature, however, of the sexual abuse of children places lay jurors at a disadvantage.  Incest is prohibited in all or almost all cultures, and the common experience of the jury may represent a less than adequate foundation for assessing the credibility of a young child who complains of sexual abuse.  If the victim of a burglary failed to report the crime promptly, a jury would have good reason to doubt that person's credibility.  A young child subjected to sexual abuse, however, may for some time be either unaware or uncertain of the criminality of the abuser's conduct.  * * * By explaining the emotional antecedents of the victim's conduct and the peculiar impact of the crime on other members of the family, an expert can assist the jury in evaluating the credibility of the complainant.  [*Id.* at 609, 610.]

■ We are satisfied that in this case there was an insufficient evidential showing at trial to demonstrate a substantial need and justification for a psychiatric examination of R.E.W. in order to challenge her competency as a witness. It appears that defendant's application for a psychiatric examination of his daughter for this purpose was based solely on her age. Defendant presented no evidence of a mental or emotional disorder, aberrational behavior, inappropriate conduct, bizarre attitudes or other kinds of peculiarity or abnormality. In fact, it was conceded that R.E.W. was a seemingly normal child. As demonstrated on *voir dire* and confirmed at trial, R.E.W. was fully oriented. She related her name, age, the school she attended, and her teacher's name; she also knew her parents had separated and that R.W. had moved away. Further, R.E.W. gave consistent, explicit descriptions of her sexual encounters with R.W. *See State v. Lairby, supra,* 699 *P.*2d at 1197. The estrangement between the parents and C.W.'s alleged hostility to R.W.—relied upon on appeal as factors bearing upon R.E.W.'s reliability—were not offered at trial as a basis to subject R.E.W. to a psychiatric examination; these factors were not persuasively shown or substantiated beyond R.W.'s assertions. *See, e.g., State v. Lairby, supra,* 699 *P.*2d 1187; *State v. Sullivan, supra,* 360 *N.W.*2d 418. Thus, no reasonable evidential grounds to doubt R.E.W.'s mental capacity and her competence as a witness sufficient to justify a psychiatric examination were shown at the trial level.

■ On appeal the defendant argued that other factors in addition to the age of R.E.W., specifically the circumstances relating to defendant's wife's work with autistic children and her training in behavior modification, as well as her hostility toward defendant and her personal motivation to obtain a favorable divorce outcome, constituted cause for a psychiatric examination to challenge R.E.W.'s reliability as a witness. However, these allegations were not further substantiated in any way as a basis for a psychiatric examination. In sum, these additional grounds were not supported by any evidence

and, under the circumstances, did not add up to a substantial showing of need and justification to require a psychiatric examination.

The Appellate Division apparently believed that a psychiatric or psychological examination was required as a matter of "fundamental fairness" to the defendant. 200 *N.J.Super.* at 569. It did not explain why this was so. Our criminal justice system recognizes fully a defendant's right to prepare a defense and have complete discovery. However, allowing a defendant to forage for evidence without a reasonable basis is not an ingredient of either due process or fundamental fairness in the administration of the criminal laws. Moreover, the possible evidentiary benefits to a defendant flowing from such a court-ordered examination of the witness are outweighed by the resulting invasion of the witness's right to privacy and the danger to the public interest from discouraging victims of crime to report and assist in the prosecution of such offenses. Where, as here, the witness has no history of mental problems, and has not been shown to have been otherwise subjected to abnormal or unusual influences bearing upon competence, and the defense merely raises the issue of potential incompetence without offering evidence impugning the witness' mental capacity, psychological stability or testimonial credibility, the request for an examination becomes only a fishing expedition. *See State v. Kahinu,* 53 *Hawaii* 536, 498 *P.*2d 635 (1972), *cert. denied,* 409 *U.S.* 1126, 93 *S.Ct.* 944, 35 *L.Ed.*2d 258 (1973); *State v. Boisvert,* 119 *N.H.* 174, 400 *A.*2d 48 (1979). The court must balance the possible emotional trauma, embarrassment, and intimidation to the complainant, particularly an extremely young child, against the likelihood that the examination will produce material, as distinguished from speculative, evidence.[3]

---

[3]The fact that repeated questioning of a child about a traumatic event will redouble the trauma is documented in Roland C. Summit, M.D., "The Child Sexual Abuse Accommodation Syndrome," 7 Child Abuse and Neglect 177 (1983) ("Disbelief and rejection by potential adult caretakers increase the

*See United States v. Benn,* 476 *F.*2d 1127 (D.C.Cir.1973); *State v. Boisvert, supra,* 119 *N.H.* 174, 400 *A.*2d 48; *People v. Piro, supra,* 671 *P.*2d 1341; *People v. King, supra,* 41 *Colo.App.* 177, 581 *P.*2d 739.

We fully appreciate the profound difficulties confronting both judges and juries in assessing the reliability of youthful witnesses. These difficulties, however, should not be weighed differently in the case of a witness who is a victim of a sexual offense. Victims of sex crimes are no less reliable as witnesses than other crime victims, who are not routinely subjected to psychiatric examinations as a pre-condition to their qualifications to testify. *See United States v. Benn, supra,* 476 *F.*2d 1127; *Commonwealth v. Joyce,* 382 *Mass.* 222, 415 *N.E.*2d 181 (1981); *Commonwealth v. Widrick, supra,* 392 *Mass.* 884, 467 *N.E.*2d 1353. As stated in *Murphy v. Superior Court In & For Maricopa County,* 142 *Ariz.* 273, 276, 689 *P.*2d 532, 535 (1984) (citations omitted):

victims of sex crimes are no less reliable than other witnesses, * * * psychiatric testimony on the credibility of witnesses is expensive and time consuming and in any case is of dubious value, and * * * requiring all such witnesses to be so examined would inconvenience them, invade their privacy, deter many of them from disclosing such offenses, * * * and serve as a tool for harassment.

*Compare California Penal Code* § 1112 ("The trial court shall not order any prosecuting witness, complaining witness, or any other witness, or victim in any sexual assault prosecution to a

helplessness, hopelessness, isolation and self-blame that make up the most damaging aspects of child sexual victimization.... Without awareness of the child's reality the professional [psychiatrist] will tend to reflect traditional mythology and to give the stamp of scientific authority to continuing stigmatization of the child"). On the need for a balance of interests in this area, *see generally* Note, "Defendants' Rights in Child Witness Competency Hearings: Establishing Constitutional Procedures for Sexual Abuse Cases," 69 Minn.L. Rev. 1377 (1985); Parker, "The Right of Child Witnesses: Is the Court a Prosecutor or Perpetrator?" 17 N.Eng.L.Rev. 643 (1981–82); and Note, "Parent-Child Incest: Proof At Trial Without Testimony in Court by the Victim," 15 U.Mich.J. of Law Reform 131 (1981).

psychiatric or psychological examination for the purpose of assessing his or her credibility").[4]

In concluding that fairness to the defendant and, presumably, the interests of justice would be advanced by allowing a psychiatric examination of the child/victim in this case, the Appellate Division failed to give appropriate recognition to the accepted grounds for admitting expert testimony. The uncritical acceptance of expert testimony can becloud the issues. *See State v. Cavallo*, 88 *N.J.* 508 (1982). *Compare State v. Piatt*, 132 *Ariz.* 145, 644 *P.*2d 881 (1981) (affirming denial of psychiatric testing because it was doubtful whether psychiatrist-expert would have helped the jury evaluate witness credibility) *with State v. Roberts, supra*, 139 *Ariz.* at 122, 677 *P.*2d at 285 (expert testimony as to witness's organic brain disorder would place jury "in much better position" to evaluate credibility).

As provided in the Rules of Evidence, *Evid.R.* 56, and reiterated by many cases, the testimony of an expert is allowed when it relates to a subject-matter beyond the understanding of persons of ordinary experience, intelligence, and knowledge. *E.g., State v. Kelly, supra*, 97 *N.J.* 178; *Evers v. Dollinger*, 95 *N.J.* 399 (1984). This applies as well to the field of child sex-abuse offenses. As we have seen, such testimony may be

---

[4]We add further that while this case involves a child, which presents a special and unique problem of witness competency, defendants charged with sexual offenses against female victims of all ages have historically based attacks against witness reliability on unsound stereotypical notions of the nature of women. *See, e.g.,* 3 *J. Wigmore,* Evidence § 924(a) (3rd ed. 1940). We totally repudiate such thinking. *See, e.g., State v. Kelly,* 97 *N.J.* 178 (1984). Contemporary understanding springs from very different perceptions and knowledge of temperament and gender. *See N.J.S.A.* 2C:14–7 (Rape-Shield statute). *See also* Eatman, "Minor Victims of Sexual Assault," *supra,* 26 N.H.Bar J. at 204–05 ("The trial court ... should be reluctant to order the complaining witness in a sexual assault case to submit to a psychiatric examination.... [C]ompetency challenges of sexual abuse victims are either direct or thinly disguised attacks on the victims' credibility. As rape complainants are no less credible than other victims, and as children are no less credible than adults, there should be no special instructions ... about subjecting to special scrutiny child witnesses' credibility").

allowed to explain generally the behavior, feelings, and attitudes of such victims when it is shown that their condition is not readily understood by persons of average intelligence and ordinary experience; an expert or scientific explanation of their condition, one accepted as reliable by the scientific community that is involved in the diagnosis, treatment, and care of such individuals, can assist a jury in understanding the evidence. *E.g. State v. Myers, supra,* 359 *N.W.*2d 604. Further, expert testimony will be allowed to describe and explain the significance of the specific conduct of the individual victim, if it has been shown that the victim suffers from some abnormality or has been exposed to some unusual condition, in addition to the alleged offense inflicted, that would not be readily perceived or recognized as such by an average person of ordinary experience. *E.g., State v. Roberts, supra,* 139 *Ariz.* 117, 677 *P.*2d 280; *see State v. Kelly, supra,* 97 *N.J.* 178. These conditions for the receipt of expert testimony serve to elucidate the quest for the truth in a criminal trial. Failure to adhere to these guidelines as a predicate for the admissibility of expert evidence will more likely confuse than clarify the truth that is the object of a criminal prosecution.

### III.

The Appellate Division determined that a remand was required to permit the defendant on a retrial of the case to subject his infant daughter, the victim of alleged sex offenses, to a psychiatric examination in order to challenge her competency as a witness. While it might have been appropriate to have given the defendant an opportunity to present evidence to support his request for a psychiatric examination, no such evidence was offered at the trial level. Consequently, we conclude that the trial court's denial of the psychiatric examination on the record presented was not an abuse of discretion and that the Appellate Division's ruling to require such an examination lacks support. Nevertheless, other errors in this case, which are not the subject of this appeal, *see supra* at 19 n. 1,

call for the remand and retrial of this case. In the event of a retrial, it remains within the sound discretion of the trial court to consider any further application for a psychiatric examination addressed to the competence of the child as a witness in accordance with the principles governing such examinations.

Accordingly, the judgment of remand is affirmed and modified.

*For affirmance and modification*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For reversal*—None.