62 A.3d 933

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
ROSKILDE GOMEZ, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted January 16, 2013—Decided April 5, 2013.

Before Judges ASHRAFI, HAYDEN and LISA.

*Gaetano T. Gregory,* Acting Hudson County Prosecutor, attorney for appellant (*Karen M. Kazanchy,* Special Deputy Attorney General/Acting Assistant Prosecutor, on the brief).

*Dennis D.S. McAlevy,* attorney for respondent.

*Jeffrey S. Chiesa,* Attorney General, attorney for amicus curiae Office of the Attorney General (*Deborah Bartolomey,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

ASHRAFI, J.A.D.

By our leave, *R.* 2:2–4; 2:3–1, the State appeals from an order of the trial court compelling the victim of an alleged aggravated assault to undergo an eye examination by a doctor selected by the defense. We reverse and remand for further consideration of defendant's discovery application within the framework of our analysis.

In June 2011, a Hudson County grand jury indicted defendant Roskilde Gomez on one count of second-degree aggravated assault, *N.J.S.A.* 2C:12–1(b)(1). The indictment charged that defendant attempted to cause, or purposely or knowingly did cause, serious bodily injury to the victim.

According to the State, on the morning of February 5, 2011, the nineteen-year-old victim was working in the parking lot of a department store in North Bergen collecting shopping carts. A car driven by defendant attempted to park in a space where the victim was working. Defendant and a male passenger got out of the car and argued with the victim. As the victim began to walk away, defendant punched him in the face several times. The

victim fell to the ground, and defendant then kicked him in the stomach. Defendant and his passenger went into the store for a few minutes before they got back into their car and left the area.

When the police arrived, the victim's face was red and swollen, and he was bleeding above his left eye. He was taken to Meadowlands Hospital, where he was examined and treated by Pierre Guibor, M.D., Chief of Ophthalmology Services. Dr. Guibor determined that the victim had suffered facial injuries including a left orbital fracture and that the trauma caused impairment of the vision in his left eye.

The police identified defendant as the assailant by tracing the license plate number of the car and by photographs taken by surveillance cameras showing defendant entering and leaving the store near the time of the assault. Subsequently, the victim and an eyewitness to the assault positively identified defendant as the assailant.

Over the next several months, Dr. Guibor continued to treat the victim's eye injury. He issued a report dated October 4, 2011, which included a diagnosis of "[r]esidual & persistent double vision superior left gaze which is permanent." The doctor's treatment plan was "for possible reconstructive surgery left orbit." The report also stated that the injury to the left eye "may be more progressive with time and result in orbital surgery in the future."

After his indictment, defendant moved to require that the victim be examined by John R. Stabile, M.D., an ophthalmologist selected by the defense. Dr. Stabile's intent was to conduct an eye examination including a dilated fundus examination, a confrontational visual field test, and a muscle balance test. Defense counsel explained that the first test required the dilation of the pupils with eye drops, and the doctor would then look into the eye with a lens and a light to view the entire retina. For the second test, the patient would cover one eye while the doctor would sit in front of him and test his field of vision. The muscle balance testing required the patient to keep his head straight and follow an object with his eye.

The trial judge ordered the victim to undergo non-invasive examination of his eyes at Dr. Stabile's office in Tenafly within thirty days. The State moved for reconsideration. Among other contentions, the State argued that the victim objected to the examination because he would lose time from work or school, and also because he believed the defense was trying to intimidate and harass him so that he would stop cooperating with the prosecution.

The trial judge denied the State's motion for reconsideration, explaining the reasons for his order. He stated that the physical examination was highly relevant to the charge brought against defendant because the extent of the injury would determine the degree of the offense under our criminal laws. He added that the court had limited the scope of the examination by excluding the invasive dilated fundus procedure, which required medication to be put into the victim's eye. The judge reasoned that the examination was only a matter of inconvenience to the victim.

On appeal, the State argues that the trial court's order is not authorized by our rules of criminal procedure and impinges upon the victim's right to be free of harassment and undignified treatment by the court. The State contends that the defense does not need its own medical examination because it has been provided discovery of the medical records from Dr. Guibor and Meadowlands Hospital, as well as the photographs of the injuries the police took on the date of the incident.

In response, defendant urges us to affirm the order because second-degree aggravated assault requires proof of "serious bodily injury," which is defined by the New Jersey Criminal Code as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *N.J.S.A.* 2C:11–1(b). In this case, the assault did not create a substantial risk of death, and it did not disfigure the victim. The State will likely seek to prove protracted loss or impairment of the victim's vision.

If the prosecution cannot prove serious bodily injury, or an attempt to cause serious bodily injury, then conviction might be at a lower offense level—third-degree aggravated assault if "significant bodily injury" is proven, or a disorderly persons simple assault if only "bodily injury" is proven. The Criminal Code defines "significant bodily injury" as "temporary loss of the function of any bodily member or organ or temporary loss of any one of the five senses," *N.J.S.A.* 2C:11–1(d), and "bodily injury" as "physical pain, illness or any impairment of physical condition," *N.J.S.A.* 2C:11–1(a).

The defense contends logically that loss or impairment of vision cannot be seen by the jurors, either by observing the victim himself or looking at photographs of the injury. It argues that the defense should be able to obtain its own medical evidence and make an independent assessment of the victim's alleged impairment of vision.

In a criminal prosecution, however, compelled physical or mental health examination of a victim or a witness must remain an extremely rare occurrence.

*Rule* 3:13–3(b)(1)(C)[1] entitles the defendant in a criminal case to inspect and copy "results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the matter." Also, subsection (b)(1)(I) of the rule entitles the defendant to discovery of any expert witnesses the prosecution intends to call at the trial, including copies of any report prepared by the expert witness. Here, the State provided to defense counsel the records of the victim's examination and treatment at Meadowlands Hospital and the report prepared by Dr. Guibor. The prosecution must also provide discovery of any exculpatory evidence, *Brady v. Maryland,* 373 *U.S.* 83, 83 *S.Ct.* 1194, 10 *L.Ed.*2d 215 (1963), which in this case would include medical evidence favorable to the defense. Defendant has not argued that the State has withheld any medical records that should have been disclosed in discovery.

---

[1] The rule was amended effective January 1, 2013, restructuring the subsection designations.

In a criminal case, the discovery rules do not provide for an independent medical examination of a victim of an assault.[2] But prior decisions of our Supreme Court lead us to conclude that a trial court has authority, within strict bounds, to order such an independent medical examination to protect a criminal defendant's due process rights. The questions before us are when and by what means a trial court may order a victim or a witness to submit to a medical or similar examination, and also how the victim's or the witness's rights can be protected.

We begin our analysis by considering whether the court has the power to order a victim or a witness to undergo an examination, even though that person is not a party in the criminal case. In *State v. Butler*, 27 *N.J.* 560, 143 *A.*2d 530 (1958), a key prosecution witness in a trial for murder and robbery had previously been confined to a mental hospital and diagnosed with mental illness. *Id.* at 598, 143 *A.*2d 530. The State had obtained a psychiatric examination, and the report produced for the State was used by the trial court ex parte to determine that the witness was competent to testify. *Id.* at 598–99, 143 *A.*2d 530. The trial court denied the defense's pretrial request for its own examination, in language indicating that it had no authority to compel the attendance of a non-party at a medical examination. *Id.* at 599, 143 *A.*2d 530.

The Supreme Court disagreed. The witness's withholding of consent for the defense examination, *id.* at 598–99, 143 *A.*2d 530, did not seem to affect the Court's view that one could be ordered. The Court acknowledged that "no express rule of practice . . . authorizes a pretrial order for a psychiatric examination of a witness[,]" but it held that courts have "inherent power . . . to issue a subpoena" compelling a witness's attendance at an examination. *Id.* at 600–01, 143 *A.*2d 530.

---

[2] *Cf. R.* 4:19 (entitling a defendant in a civil case to obtain an independent medical examination where a plaintiff claims personal injuries).

In a later case, the defense sought a psychiatric evaluation of a three-year-old victim of alleged sexual abuse to determine her competency to testify and her mental state as possibly affecting her credibility. *State v. R.W.*, 104 *N.J.* 14, 17, 514 *A.*2d 1287 (1986). The Supreme Court again observed, "[i]nherent in the trial court's discretion to qualify a witness as competent is the power to have the individual submit to psychiatric or psychological evaluation." *Id.* at 21, 514 *A.*2d 1287. The Court added, though, that "[p]sychiatric testing on the issue of witness competency is an extraordinary measure." *Id.* at 22, 514 *A.*2d 1287. It ultimately held that a psychiatric examination could not be justified solely by the young age of the victim. *Id.* at 27, 514 *A.*2d 1287.

Unlike this case, *Butler* and *R.W.* addressed psychiatric examinations primarily for the purpose of assessing a witness's competency to testify—a threshold matter that must be decided by the trial judge pursuant to *N.J.R.E.* 601.[3] The Court has also considered in other contexts whether criminal trial courts have authority to order a victim or a witness to participate in a pretrial procedure for the benefit of the defense.

In *State ex rel. W.C.*, 85 *N.J.* 218, 225, 426 *A.*2d 50 (1981), the Court held that a victim or a witness could be ordered to view a pretrial lineup. The Court concluded that a lineup may be ordered only if identification is a material issue, if it is reasonably likely that it would produce probative evidence, and if the defendant's motion came "as soon after arrest or arraignment as practicable."[4] *Id.* at 226–27, 426 *A.*2d 50. The trial court may

---

[3] The Court in Butler also indicated that evidence obtained by a psychiatric examination would be admissible as bearing on the witness's credibility. *See Butler, supra,* 27 *N.J.* at 605, 143 *A.*2d 530 ("The *ex parte* decision [on the witness's competency] deprived the defendants of the substantial right to contest the issue of competency and to supply the jury with pertinent evidence on the important problem of credibility."). As our discussion of subsequent cases will suggest, the Court has never stated or implied that a defendant is entitled to an independent psychiatric examination of a witness for the sole purpose of obtaining impeachment evidence.

[4] We have no occasion to consider in the context of this case whether the holding of *W.C.* is affected by the Supreme Court's recent analysis of identification evidence in *State v. Henderson,* 208 *N.J.* 208, 27 *A.*3d 872 (2011).

deny a defense motion for a lineup if, after balancing other factors, the benefit to the defendant is outweighed by the inconvenience to the State and, especially, to the victim or witness. *Id.* at 227, 426 *A.*2d 50.

The issue of the victim's personal rights came to the forefront in *State v. D.R.H.*, 127 *N.J.* 249, 604 *A.*2d 89 (1992), where the defense sought a physical examination of a child sexual abuse victim to challenge the State's substantive inculpatory evidence. A doctor who was expected to testify for the State had examined the ten-year-old girl and concluded that his observations were consistent with the alleged digital penetration of the victim. *Id.* at 253, 604 *A.*2d 89. The child later recanted her allegations of sexual abuse and refused a second physical examination that was requested by the defense and ordered by the trial court. *Id.* at 255–56, 604 *A.*2d 89. The trial court dismissed the indictment, and a panel of this court affirmed the dismissal. *Id.* at 255, 604 *A.*2d 89.

The Supreme Court reversed, noting at the outset that:

[C]riminal discovery has its limits. For example, defendants cannot transform the discovery process into an unfocused, haphazard search for evidence.... Another significant limitation on defendants' discovery rights is the chilling and inhibiting effect that discovery can have on material witnesses who are subjected to intimidation, harassment, or embarrassment.

[*Id.* at 256, 604 *A.*2d 89 (citing *R.W., supra,* 104 *N.J.* at 28, 514 *A.*2d 1287; *W.C., supra,* 85 *N.J.* at 225–27, 426 *A.*2d 50).]

The Court considered the length of time between the sexual abuse and the proposed defense examination of the child as bearing negatively on the probative value of any evidence that might be obtained. *Id.* at 263–64, 604 *A.*2d 89. Still, the Court did not entirely prohibit such an examination in an appropriate case. Its holding required consideration of factors similar to those discussed in *W.C.*:

[C]ourts may order the physical examination of a child sexual abuse victim only when satisfied that the defendant has made a sufficient showing that such an examination can produce competent evidence that has substantial probative worth, and if admitted and believed by the trier of fact, that evidence could refute or neutralize incriminating evidence or impugn the credibility of prosecution wit-

nesses. *Further, the court must be satisfied that the defendant's need clearly outweighs the possible harmful consequences to the alleged victim.*
[*Id.* at 260–61, 604 *A.*2d 89.]

In sum, the Supreme Court has required that a defendant demonstrate a "compelling or substantial need" for the discovery sought. *Id.* at 259, 604 *A.*2d 89; *see W.C., supra*, 85 *N.J.* at 226, 426 *A.*2d 50; *Butler, supra*, 27 *N.J.* at 605, 143 *A.*2d 530; *see also State v. Michaels*, 264 *N.J.Super.* 579, 609, 625 *A.*2d 489 (App.Div. 1993) ("Defendant's general assertion that a defense psychiatric examination of the children [in a sexual abuse trial] was necessary to determine whether they were traumatized is patently insufficient to allow such relief."), *aff'd*, 136 *N.J.* 299, 642 *A.*2d 1372 (1994). The court must also consider whether the order will risk "intimidation, unnecessary annoyance, harassment or embarrassment" to the victim or witness, *W.C., supra*, 85 *N.J.* at 227, 426 *A.*2d 50; *accord D.R.H., supra*, 127 *N.J.* at 256, 604 *A.*2d 89, and whether the length of time between the incident and the requested examination has diminished the likelihood of finding probative evidence, *D.R.H., supra*, 127 *N.J.* at 263–64, 604 *A.*2d 89; *W.C., supra*, 85 *N.J.* at 226–27, 426 *A.*2d 50. A showing of "compelling or substantial need" also means that comparable information is not available to the defense from other sources. Generally, such a need will not be shown where the defense is searching for potentially favorable evidence but without focusing on a specific, legitimately-disputed issue that can be resolved only with the aid of an independent defense examination of the victim or witness.

█ Viewing all the circumstances, the trial court must balance the right of the defendant to due process against the rights of the victim or witness. It may order the discovery only if the defendant's right clearly outweighs the victim's or witness's rights with respect to the specific discovery sought and its purpose. *D.R.H., supra*, 127 *N.J.* at 261, 604 *A.*2d 89; *W.C., supra*, 85 *N.J.* at 227–28, 426 *A.*2d 50.

Compelled physical examinations also raise some Fourth Amendment questions. The United States Supreme Court has

held that the Fourth Amendment bars the State from compelling a defendant to undergo an invasive surgical procedure to obtain evidence lodged in his body. *See Winston v. Lee,* 470 *U.S.* 753, 767, 105 *S.Ct.* 1611, 1620, 84 *L.Ed.*2d 662, 673 (1985) (surgery to remove bullet with evidential value from robbery defendant's chest would be unreasonable search and seizure). Victims and witnesses are entitled to at least the same Fourth Amendment protections as defendants. In this case, the trial court avoided any Fourth Amendment issue by limiting its order to a non-invasive visual exam.[5]

The State contends that the trial court's order violated the rights of the victim under the Victim's Rights Amendment of the New Jersey Constitution and the statutory protections of the Crime Victim's Bill of Rights. The Victim's Rights Amendment was overwhelmingly adopted by the electorate in 1991. *See State v. Muhammad,* 145 *N.J.* 23, 33, 678 *A.*2d 164 (1996). It provides in pertinent part:

A victim of a crime shall be treated with fairness, compassion and respect by the criminal justice system. . . . A victim of a crime shall be entitled to those rights and remedies as may be provided by the Legislature.

[*N.J. Const.* art. I, ¶ 22.]

Even before the amendment, the New Jersey Legislature enacted the Crime Victim's Bill of Rights, *N.J.S.A.* 52:4B–34 to –38. The legislation established "specific rights" to enhance and protect the "participation and cooperation of crime victims" in the criminal justice system. *N.J.S.A.* 52:4B–35. The statute gives victims the right to be treated "with dignity and compassion" by the criminal

---

[5] Not all procedures that might be described as invasive are restricted by the Fourth Amendment. *See Schmerber v. California,* 384 *U.S.* 757, 771–72 & n. 13, 86 *S.Ct.* 1826, 1836 & n. 13, 16 *L.Ed.*2d 908, 920 & n. 13 (1966) (involuntary blood draw for alcohol test of suspect did not violate Fourth Amendment where the "blood test procedure has become routine in our everyday life"). We reach no conclusions in this appeal on the full scope of potential constitutional protections, or whether a victim or a witness can be compelled to submit to a "routine" invasive procedure. While the Fourth Amendment provides an outer limit to a court's authority, we anticipate that the proper application of the standards enunciated here would yield a narrower discovery order.

justice system, *N.J.S.A.* 52:4B–36(a), the right to participate in criminal prosecutions free of "intimidation, harassment or abuse," *N.J.S.A.* 52:4B–36(c), and the right to have "inconveniences ... minimized to the fullest extent possible," *N.J.S.A.* 52:4B–36(d). *Cf. State v. Timmendequas,* 161 *N.J.* 515, 555–56, 737 *A.*2d 55 (1999) (the Crime Victim's Bill of Rights justified the trial court in considering the hardship to the victims if venue were changed). Because the statute does not give a victim the right to abstain from participating in criminal prosecutions, it is the court's duty to ensure that the victim is not subjected to intimidation, harassment, abuse, or preventable inconvenience.

■ The State argues that compelling a victim to undergo a medical examination violates the "spirit" of the Crime Victim's Bill of Rights. After enactment of the legislation, however, the Supreme Court held in *D.R.H., supra,* 127 *N.J.* at 256, 604 *A.*2d 89, that the court has "inherent power" to order a victim to attend a physical examination. The Crime Victim's Bill of Rights requires that the court consider the hardship and inconvenience to the victim; it does not abrogate the authority of the court to order an examination in appropriate, although rare, circumstances.

The State contends the trial court's order in this case did not adequately take into consideration the hardship and the inconvenience to the victim. The order requires the victim to travel from Hudson County to Tenafly in Bergen County, and it will cause the victim to lose time from work or school. We agree with the State that the Victim's Rights Amendment of our State Constitution and the Crime Victim's Bill of Rights required consideration of those types of costs and inconveniences to the victim. If the victim must undergo a physical examination at the doctor's office, defendant should be required not only to pay all the costs of the examination but also to accommodate the victim's reasonable scheduling and transportation needs.

Another consideration is the enforcement power of the court should the victim refuse to comply. Normally, penalties for non-compliance should not be imposed on the victim, who is not a party

to the case and who, unlike a plaintiff in civil litigation, does not control whether the case goes forward or not. Rather than directing the victim to act, the trial court's order should have been addressed to the State, which is a party to the case. The State can balance the interests of the victim with the interests of the public in pursuing the prosecution. It can determine whether it will produce the victim for the examination or seek an alternative disposition of the issue.

The court has power to impose consequences upon the State if it fails to produce the victim for a defense examination, such as prohibiting the State from presenting the testimony of the treating doctor. *See People v. Wheeler,* 151 *Ill.*2d 298, 176 *Ill.Dec.* 880, 602 *N.E.*2d 826, 833 (1992) (unless the victim consented to a psychiatric examination by defendant's expert, the State could not introduce the testimony of an *examining* expert to prove rape trauma syndrome but could still introduce relevant evidence through non-examining experts). Other potential sanctions could be to bar expert testimony altogether or to limit the scope of the victim's testimony about his injuries. Dismissing charges contained in the indictment should be a remedy of last resort, saved for extreme circumstances, where no other remedy would balance the parties' interests in a fair trial. *Cf. State v. Perry,* 124 *N.J.* 128, 168–69, 590 *A.*2d 624 (1991) ("An indictment should be disturbed only on the 'clearest and plainest ground.' ") (quoting *State v. N.J. Trade Waste Ass'n,* 96 *N.J.* 8, 18–19, 472 *A.*2d 1050 (1984)).

To summarize our conclusions, a trial court may exercise its inherent authority consistent with due process to issue a subpoena or an order for a victim or a witness to attend a non-invasive physical or mental examination. Such a discovery order should be issued rarely, only upon a showing by the defendant of a compelling or substantial need for the examination. Defendant must demonstrate that comparable evidence is not available through another source, and that the benefit to the defendant clearly outweighs the hardship or inconvenience to the victim or

the witness. Normally, any punishment for refusal should not fall upon the victim, but consequences can be imposed upon the State. Finally, any such order should include provisions to avoid any expense to the victim and to minimize other monetary loss or inconvenience.

In the circumstances of this case, defendant's request for an independent eye examination might be the rare criminal case that justifies an independent defense medical examination. But first, the defense must satisfy threshold requirements for such an order. Defendant must show that the evidence available under the existing discovery rules is insufficient to protect his due process right to prepare and present a defense, including expert medical opinion. The specific type of injury involved, and whether its extent and seriousness are legitimately disputed, are relevant in determining whether an independent examination could produce sufficiently probative evidence. Here, the defense did not present an opinion from Dr. Stabile, or make a showing in another way, that the medical records of the hospital and the doctor's report and notes are insufficient to assess the nature and degree of the victim's injuries. *Cf. D.R.H., supra,* 127 *N.J.* at 264, 604 *A.*2d 89 (no showing that doctor testifying for defendant could not challenge the conclusions of the doctor presented by the State without conducting an independent examination).

The court must also take into consideration that Dr. Guibor's diagnosis and conclusions are not those of an expert engaged by the prosecution for purposes of litigation. Rather, they constitute evidence provided by a treating physician and made available to the defense under the discovery rules. If the documented records are inadequate, the defense may yet be able to obtain additional information through further inquiry of Dr. Guibor instead of conducting an examination of the victim. We have no reason to conclude that the defense, and specifically Dr. Stabile, have been denied access to Dr. Guibor. Before moving for an order to compel examination of the victim, the defense must show not only that the discovery it has received is insufficient but also that its

own further investigation has not been fruitful in developing adequate medical information for its own expert to provide an opinion about the nature and degree of the victim's injuries.

Next, although an independent defense examination might provide relevant exculpatory evidence in this case because of the essential elements of second-degree aggravated assault as charged, more than two years have passed from the time of the assault until the examination can be conducted. We cannot determine from the existing record whether Dr. Stabile's vision and medical examination might in fact produce sufficiently probative evidence. If the State intends to present evidence at trial and argue to the jury that the victim's vision remains impaired to the present time, then the independent defense examination might produce probative exculpatory evidence. However, if the State contends that a protracted period of impairment of the eye existed but not to the present time, or alternatively, that defendant attempted to cause serious bodily injury but may not have actually caused that level of injury, then a current eye examination would not be particularly relevant even if the results are favorable to defendant. In those circumstances, there may not be a "compelling or substantial need" for the discovery defendant seeks. The trial court must determine what issues will actually be presented and disputed at trial before deciding that defendant has satisfied the stringent criteria to compel an examination of the victim.

The record is insufficient for us to determine whether the probative value of the proposed examination is such that defendant has a compelling or substantial need for it that clearly outweighs the victim's rights. On remand, the trial court shall consider all the relevant factors we have discussed and make a new, initial determination of whether an order for the examination should be entered. If it is, the order should be directed to the State and should include conditions so that the victim does not incur any expenses and so that other monetary loss and inconvenience to the victim are minimized.

Reversed and remanded. We do not retain jurisdiction.