# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0005-19T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

L.F.S.,[1]

     Defendant-Appellant.

_____

Submitted October 14, 2020 – Decided November 4, 2020

Before Judges Yannotti and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 11-05-0514.

Joseph E. Krakora, Public Defender, attorney for appellant (John V. Molitor, Designated Counsel, on the briefs).

Robert J. Carroll, Morris County Prosecutor, attorney for respondent (Paula Jordao, Assistant Prosecutor, on the brief).

---

[1] We use initials to identify defendant to protect the identity of a victim of sexual offenses. See R. 1:38-3(c)(9), (12).

PER CURIAM

Defendant appeals from a June 24, 2019 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

Defendant was convicted of two counts of first-degree aggravated sexual assault contrary to N.J.S.A. 2C:14-2(a)(1). We affirmed defendant's convictions and sentence, see State v. L.F.S., No. A-1805-14 (App. Div. March 20, 2017), certif. denied, 230 N.J. 607 (2017).

We briefly recount relevant portions of the trial record to provide necessary background for our opinion. At trial, L.S., one of defendant's three daughters, provided extensive and detailed testimony that defendant sexually assaulted her over the course of five years beginning when she was eleven years old. L.S. testified that defendant vaginally penetrated her and touched her breasts and vagina with his hands and mouth. L.S. stated there were "more than [eighty] times" such incidents occurred over the years and they would typically occur in the morning, after the other family members left the house.

L.S. explained that she did not tell anyone about these assaults for a significant period of time because she was frightened that "[her] family [would] get separated" if she reported the abuse. Eventually, L.S. did disclose the abuse

to four separate individuals: her seventh-grade friend, her older sister, her mother, and her high school teacher. The teacher reported the abuse to school officials, who then informed the police.

During her first interview with detectives, L.S. said the sexual abuse went on for only two years. During her second interview, however, L.S. stated the abuse had lasted several years and had continued up until a week before she first spoke with the detectives. She testified that she initially limited the time of the abuse because she was embarrassed.

At trial, the State presented the testimony of Anthony Vincent D'Urso, Psy.D., who was qualified as an expert in behavioral science and child sexual abuse. Dr. D'Urso primarily testified regarding Child Sexual Abuse Accommodation Syndrome (CSAAS), which he described as a psychological theory that attempts to explain the differences between an adult victim and a child victim of sexual assault.[2] Dr. D'Urso noted, however, that he had not evaluated L.S., nor was he familiar with the specific allegations against defendant.

---

[2] Roland Summit, M.D., first identified CSAAS as a "syndrome" in 1983. State v. J.L.G., 234 N.J. 265, 271, 281 (2018). Dr. Summit opined that the syndrome included five categories of behavior that were common in victims of child sexual abuse: secrecy; helplessness; entrapment and accommodation; delayed disclosure; and retraction. Id. at 281-82.

Defendant testified and denied sexually assaulting L.S. He also stated that on the occasions when L.S. claimed he sexually assaulted her before school, he was at work. Defendant's wife also testified on his behalf.

Defendant also presented evidence that when he was in jail awaiting trial on these charges, L.S. wrote to him about the allegations. In the letter, L.S. apologized to defendant "for all the things [he] ha[d] to go thr[ough] th[ese] past months." The letter also stated that, "I didn't know how far my actions w[]ere going to go. [A]nd little by little I just caught my[]self in a lie and I guess I was just mad, mad at the fact I felt like a prisoner in my own house with no way out." L.S. testified, however, that she did not mail the letter and that someone else had. L.S. said the statements in the letter were not true and that she wrote it because she felt bad for her father.

On direct appeal, defendant argued that the trial court erred in allowing cumulative fresh complaint testimony of L.S.'s seventh-grade friend and committed plain error by allowing Dr. D'Urso's testimony under N.J.R.E. 702 because it was not based on reliable scientific principles. He also maintained his sentence was manifestly excessive and unduly punitive. As noted, we rejected these arguments and affirmed.

A-0005-19T4

We rejected defendant's challenge to Dr. D'Urso's testimony explaining that we were "bound" by relevant Supreme Court's precedent. L.F.S., slip op. at 13. We also noted that "defendant did not challenge the admission of CSAAS testimony in the trial court" resulting in an inadequate record for appellate review. Ibid.

Defendant filed a timely petition for post-conviction relief (PCR) in which he first maintained that J.L.G., 234 N.J. 265, should be applied retroactively to his case. To better understand defendant's argument, we briefly discuss the evolution of the admissibility of CSAAS testimony under New Jersey law.

Prior to defendant's trial, "the use of . . . [CSAAS] expert testimony [was] well settled." State v. W.B., 205 N.J. 588, 609 (2011). Indeed, New Jersey courts first discussed and accepted this psychological phenomenon over twenty years ago in State v. J.Q., 130 N.J. 554, 579 (1993). The J.Q. court found CSAAS testimony was sufficiently reliable to permit the State to present expert testimony to "explain why many sexually abused children delay reporting their abuse, and why many children recant allegations of abuse and deny that anything occurred." Ibid. (quoting John E. B. Myers et al., Expert Testimony in Child Sexual Abuse Litigation, 68 Neb. L. Rev. 1, 67-68 (1989)).

A-0005-19T4

In 2018, however, the Supreme Court in J.L.G. again reviewed the scientific evidence and concluded "it is no longer possible to conclude that CSAAS has a sufficiently reliable basis in science to be the subject of expert testimony." J.L.G., 234 N.J. at 272. Accordingly, our Supreme Court ruled that expert testimony about CSAAS and four of its component behaviors could no longer be admitted at criminal trials. Ibid. The Court carved out a narrow exception for delayed disclosure and held that evidence of that behavior could be presented if it satisfied N.J.R.E. 702. Ibid. Specifically, the Court in J.L.G. reasoned:

> Based on what is known today, it is no longer possible to conclude that CSAAS has a sufficiently reliable basis in science to be the subject of expert testimony. We find continued scientific support for only one aspect of the theory – delayed disclosure – because scientists generally accept that a significant percentage of children delay reporting sexual abuse. We therefore hold that expert testimony about CSAAS in general, and its component behaviors other than delayed disclosure, may no longer be admitted at criminal trials. Evidence about delayed disclosure can be presented if it satisfies all parts of the applicable evidence rule. See N.J.R.E. 702. In particular, the State must show that the evidence is beyond the understanding of the average juror.
>
> [Ibid.]

A-0005-19T4

The Supreme Court has recently ruled that its holding in J.L.G. applies retroactively to cases that were pending appeal in 2018 when the Court issued the ruling in J.L.G.  State v. G.E.P., ___ N.J. ___, ___ (2020) (slip op. at 42-43).

Defendant also argued before the PCR court that he was prejudiced by his trial counsel's constitutionally deficient performance because he failed to: 1) challenge Dr. D'Urso's testimony by requesting an N.J.R.E. 104 hearing, 2) create a record for later appellate review with regard to Dr. D'Urso's testimony, 3) retain an expert witness to rebut Dr. D'Urso's testimony, and 4) request a mental health evaluation of L.S.

On June 24, 2019, Judge Stephen J. Taylor denied defendant's petition. At the time Judge Taylor issued his written opinion, the Supreme Court had not addressed the issue of the retroactivity of its decision in J.L.G.  Judge Taylor relied, however, on our opinion in State v. G.E.P., 458 N.J. Super. 436 (App. Div. 2019), for its holding that J.L.G. applied only with pipeline retroactively. Judge Taylor concluded that as defendant had exhausted his direct appeals, his "matter f[ell] outside the range of pipeline retroactivity."  As noted, on August 5, 2020, the Supreme Court affirmed, in part, our holding in G.E.P. and held that

pipeline retroactivity, not full retroactivity, applied to the J.L.G. decision. G.E.P., ___ N.J. ___ (slip op. at 13, 40).

With regard to defendant's ineffective assistance of counsel claims, Judge Taylor concluded that defendant failed to satisfy the two-part test detailed in Strickland v. Washington, 466 U.S. 688 (1984), and adopted by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42 (1987). With respect to prong one, Judge Taylor determined that "[defendant] . . . failed to prove by a preponderance of the evidence that trial counsel's performance" fell below the objective standard of Strickland. The judge reasoned that trial counsel was bound by "the extensive Supreme Court precedent allowing CSAAS expert testimony" and therefore, "not deficient in failing to challenge the admissibility of Dr. D'Urso's testimony." Judge Taylor noted that a "formal challenge mounted against CSAAS testimony" did not occur until years after defendant's 2013 trial and concluded "trial counsel was not deficient in failing to anticipate the later challenge."

Moreover, Judge Taylor noted trial counsel's "strategy as born out during trial was to challenge Dr. D'Urso through cross-examination, rather than engage in a battle of experts." The judge noted that counsel "objected to certain portions of Dr. D'Urso's direct examination" and "engaged Dr. D'Urso in cross-

examination regarding the extent of his testimony." Judge Taylor relied on <u>State v. Echols</u>, 199 N.J. 344, 358 (2009), and concluded that trial counsel's strategy to rebut Dr. D'Urso's testimony on cross-examination in lieu of presenting an expert witness was "'counsel's exercise of judgment,' and mere dissatisfaction with counsel's judgment [wa]s insufficient to warrant overturning a conviction."

Finally, the judge relied on <u>In re A.B.</u>, 219 N.J. 542 (2014), for the proposition that a psychiatric examination of a victim can be compelled only if there is a "substantial showing of need and justification" and that, "ultimately[, it is] in the court's discretion to determine the competency of a witness." Judge Taylor found that trial counsel's failure to request an independent mental health evaluation of L.S. was not constitutionally deficient because defendant failed to present "any evidence meeting the high standard needed to order an evaluation" and it was "highly unlikely" that an application for a psychological evaluation would have been successful.

With respect to prong two, Judge Taylor determined that defendant was not prejudiced by trial counsel's decisions not to directly challenge Dr. D'Urso's testimony. The judge found that the trial court followed the appropriate framework under the case law at the time and, "given the extensive case law, the trial judge was bound by precedent to admit the evidence in its limited capacity."

On appeal, defendant raises the following points:

POINT I

THIS COURT SHOULD REVERSE THE TRIAL COURT'S DECISION TO DENY DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF BECAUSE DEFENDANT'S TRIAL COUNSEL SHOULD HAVE ASKED THE TRIAL COURT TO CONDUCT AN N.J.R.E. 104 HEARING ON THE ADMISSIBILITY OF CSAAS EVIDENCE.

POINT II

THIS COURT SHOULD REVERSE THE TRIAL COURT'S DECISION TO DENY DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF BECAUSE [DR.] D'URSO'S TESTIMONY VIOLATED THE LAW ON CSAAS EVIDENCE AT THE TIME OF DEFENDANT'S TRIAL.

POINT III

THIS COURT SHOULD REVERSE THE TRIAL COURT'S DECISION TO DENY DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF BECAUSE DEFENDANT'S TRIAL COUNSEL SHOULD HAVE INTRODUCED EXPERT TESTIMONY THAT CSAAS EVIDENCE IS NOT SCIENTIFICALLY RELIABLE.

POINT IV

THIS COURT SHOULD REVERSE THE TRIAL COURT'S DECISION TO DENY DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF BECAUSE DEFENDANT'S TRIAL ATTORNEY

10

SHOULD HAVE ASKED FOR A PSYCHOLOGICAL
EXAMINATION OF L.S.

We disagree with defendant's arguments and affirm substantially for the reasons stated by Judge Taylor in his nineteen-page written decision. R. 2:11-3(e)(2). We agree with Judge Taylor that any deficiencies of trial counsel failed to meet either the performance or prejudice prong of the Strickland test. We offer the following comments to amplify our decision.

II.

A claim for ineffective assistance of counsel must satisfy the two-part test pronounced in Strickland by demonstrating that "counsel's performance was deficient," that is, "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687; see also Fritz, 105 N.J. at 58. The first prong requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.

A defendant, however, must overcome a strong presumption that counsel rendered reasonable professional assistance. Id. at 689. "[C]omplaints 'merely of matters of trial strategy'" will not establish a valid ineffective assistance of counsel claim. Fritz, 105 N.J. at 54 (quoting State v. Williams, 39 N.J. 471, 489 (1963)); see also State v. Nash, 212 N.J. 518, 543 (2013) ("The test is not

11

whether defense counsel could have done better, but whether he met the constitutional threshold for effectiveness."). Further, the failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel. State v. Worlock, 117 N.J. 596, 625 (1990); Strickland, 466 U.S. at 688. It is the defendant's burden to prove, by a preponderance of the evidence, that counsel's decisions about trial strategy were not within the broad spectrum of competent legal representation. Fritz, 105 N.J. at 52.

Under the second prong, a defendant must demonstrate that his counsel's errors prejudiced the defense such as to deprive defendant of a fair and reliable trial outcome. Strickland, 466 U.S. at 687. To prove this element, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

With respect to defendant's first and third points, at the time of defendant's 2013 trial, his counsel was confronted with nearly two decades of case law that permitted the introduction of CSAAS testimony. Under such circumstances counsel cannot be deemed ineffective for not requesting an N.J.R.E. 104 hearing related to such testimony or for failing to present contrary expert testimony. See Strickland, 466 U.S. at 690 (finding "the reasonableness of counsel's challenged conduct" is judged "on the facts of the particular case, viewed as of the time of

12

counsel's conduct"); see also State v. Allegro, 193 N.J. 352, 366 (2008) ("In gauging whether a valid claim of ineffective assistance of counsel has been presented, 'the court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" (quoting State v. Castagna, 187 N.J. 293, 314 (2006))).

Further, in J.L.G., the Court announced a new rule of law which the Supreme Court later afforded only pipeline retroactivity. G.E.P., ___ N.J. ___ (slip op. at 13, 40); see also State v. Burstein, 85 N.J. 394, 402-03 (1981) (explaining a court's options in determining the effect of an announcement of a new rule of law). The new rule of law expressed in J.L.G. therefore is inapplicable to defendant's case because he exhausted the direct appeals of his conviction when the Supreme Court denied his petition for certification in 2017. Defendant cannot obtain relief from his conviction through a PCR petition where the new rule of law upon which he relies is not retroactive to his conviction. See State v. Cupe, 289 N.J. Super. 1, 11 (App. Div. 1996) (explaining that "a case decided after a defendant's conviction and sentence has become final may not provide the basis for [PCR] if it announces a new rule of law" unless it is determined the new rule of law applies retroactively to the defendant's conviction and sentence). We also observe that defendant has not identified any

expert that was available and would have testified at defendant's trial nor the precise opinions the expert would have offered.

III.

Defendant's second argument that Dr. D'Urso's trial testimony was inconsistent with applicable law at the time of defendant's trial is both procedurally and substantively without merit. Procedurally, defendant failed to raise the issue before the PCR court or on direct appeal.

First, as defendant failed to raise the issue before the trial court, "its legal propriety never was ruled on . . . [and] the issue was not properly preserved for appellate review." State v. Robinson, 200 N.J. 1, 18-19 (2009). Here, defendant's contention does not "go to the jurisdiction of the trial court or concern matters of great public interest," warranting an exception to the general prohibition against deciding an issue on appeal that was "not properly presented to the trial court." Id. at 20 (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)).

Second, it is well settled that post-conviction relief is not a substitute for a direct appeal. State v. Echols, 199 N.J. 344, 357 (2009). Accordingly, petitions may be barred if a petitioner could have raised an issue on direct appeal but failed to do so. Ibid. PCR will be precluded "if any ground for relief could

have been raised at trial or on appeal" but was not. State v. Peoples, 446 N.J. Super. 245, 254-55 (App. Div. 2016) (citing State v. Afanador, 151 N.J. 41, 50 (1997)).

Defendant clearly could have raised this claim on direct appeal. Indeed, as we noted in our unpublished opinion, defendant argued that it was "plain error for the trial judge to admit Dr. D'Urso's expert testimony under N.J.R.E. 702 because CSAAS allegedly is not a scientifically reliable theory," and alternatively requested a remand for the trial court create an appropriate record to support his claim that CSAAS testimony was not admissible. L.F.S., slip op. at 11, 12. We also conclude that for the reasons that follow "enforcement of the bar to preclude claims . . . would [not] result in fundamental injustice." Rule 3:22-4(a)(2).

For purposes of completeness, we also address, and reject, defendant's third argument on the merits. First, we note that contrary to defendant's characterization, Dr. D'Urso testified that the purpose of his testimony was educational and not predictive or diagnostic. Dr. D'Urso also stressed that he had not evaluated L.S., was unfamiliar with L.S.'s specific allegations, and testified that he was "not saying that something in fact happened in this case."

A-0005-19T4

Further, the court gave numerous instructions regarding the limited nature of Dr. D'Urso's testimony.

Dr. D'Urso's testimony and the court's limiting instructions were consistent with then existing law. See State v. Schnabel, 196 N.J. 116, 123, 134 (2008); State v. R.B., 183 N.J. 308, 327 (2005) ("The vice identified in State v. J.Q. was the expert's ultimate conclusion."). As directed by the Court in R.B. , Dr. D'Urso stated he had no relevant facts regarding the parties or the circumstances of the case, see R.B., 183 N.J. at 322-23, nor did he offer a statistical analysis regarding the percentage of child victims who fabricate sexual abuse allegations as did the State's CSAAS expert in W.B. See State v. W.B., 205 N.J. 588, 612-14 (2011).

We are also satisfied that Dr. D'Urso did not attempt to "connect the dots" between L.S.'s behavior and CSAAS contrary to R.B. See 183 N.J. at 328. While L.S.'s testimony was in part suggestive of CSAAS, Dr. D'Urso did not offer an opinion that L.S.'s behavior was consistent with CSAAS and he did not opine that she was the victim of a sexual assault. We stress that we do not decide if Dr. D'Urso's testimony would be admissible today, but rather that his testimony was not inconsistent with long-standing precedent such that any inaction of defendant's counsel would satisfy the two-part Strickland test.

In sum, we conclude defendant failed to satisfy that standard and further agree with Judge Taylor that Dr. D'Urso's testimony did "not raise a substantial question about the accuracy and fairness of the trial, given the limited nature of the testimony consistent with case-law." That conclusion is further reinforced by the detailed testimony of the victim, as corroborated by two fresh complaint witnesses, and her mother who confirmed L.S. informed her of the abuse.

IV.

We also reject defendant's fourth argument that his counsel's performance was deficient because he failed to request a psychological examination of L.S.

"To compel a psychiatric examination of a victim for the purpose of challenging her competency to testify, a defendant must . . . demonstrate a 'substantial showing of need and justification.'" In re A.B., 219 N.J. 542, 557 (2014) (quoting State v. R.W., 104 N.J. 14, 21 (1986)). If this standard is met, then the "court must balance the possible emotional trauma, embarrassment, and intimidation to the complainant, particularly an extremely young child, against the likelihood that the examination will produce material, as distinguished from speculative, evidence." Ibid. (quoting R.W., 104 N.J. at 28). As Judge Taylor correctly concluded, defendant failed to present sufficient evidence that would have met the high standard to compel such an evaluation and consequently did

not "demonstrate[] that any request for a mental health evaluation would have been granted by the trial court."

Finally, as defendant failed to establish a prima facie case under Strickland, he was not entitled to an evidentiary hearing. State v. Preciose, 129 N.J. 451, 462 (1992). To the extent we have not addressed any of defendant's arguments it is because we have concluded that they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION